Stuart M. Eppsteiner (SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (SBN 246902)
ajk@eppsteiner.com
Zelekha Amirzada (SBN 250419)
za@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Suite 155
San Diego, California 92130
T: 858-350-1500
F: 858-350-1501

Counsel for Plaintiff and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS WOOD, individually and on behalf of all others similarly situated, <br><br> PLAINTIFF, <br><br> vs. <br><br> BBG COMMUNICATIONS, INC.,  BBG GLOBAL AG, and DOES 1-10 INCLUSIVE, <br><br> DEFENDANTS. | CASE NO.: 3:11-cv-00227-AJB-NLS <br><br> **PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Date:        September 23, 2011 <br> Time:        1:30 p.m. <br> Courtroom: 12 <br> Judge:      Hon. Anthony J. Battaglia <br><br> Complaint Filed:  February 2, 2011 <br> Trial Date:     None Set. |

PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC
166002

1

## <u>TABLE OF CONTENTS</u>

2
Page

3   I.    INTRODUCTION.................................................................................1

4   II.   THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA....................3

5         a.   The Legal Standard for 12(b)(1) Motions..................................4

6         b.   Extraterritoriality...............................................................4

7         c.   International Comity..........................................................7

8
9         d.   Because California Has A Strong Interest In Regulating the Conduct of
               Companies Doing Business In This State, Applying California Law
10             In This Action Does Not Violate The Due Process Clause.......................9

11              i.    Choice of Law Standard.................................................10

12              ii.   BBG Has Not Sufficiently Demonstrated That the Laws Are Materially
13                    Different...................................................................11

14              iii.  If A Conflict Were to Exist, California Has the Greatest Interest in
                      Regulating the Conduct of Corporations Operating Within Its Borders..........13
15
16              iv.   The Unfair, Unlawful, Fraudulent, and Deceptive Practices Most Impair
                      the Laws of California................................................15

17   III.  PLAINTIFF HAS SUFFICIENTLY STATED HIS CLAIMS...........................15

18
19        a.   Is Responsible for the Non-Disclosures.................................16

20        b.   The Dormant Commerce Clause Is Inapplicable Because the Wrongful Conduct
               Emanated from California...............................................16
21
22        c.   Hong Kong Law Does Not Provide A Safe Harbor Against the UCL................19

23        d    Plaintiff has Sufficiently Pled a UCL "Unlawful" Claim..............................19

24        e.   Plaintiff's CLRA Claim Based On Unconscionability Is Sufficiently Pled...........21

25        f.   Money Had and Received, Money Paid, and Restitution/Unjust Enrichment.........22

26
27
28

i

IV. BBG FAILS TO PROVIDE A BASIS UPON WHICH THIS COURT
MAY DISMISS PLAINTIFF'S CLASS ALLEGATIONS ....................................23

    a.   The Court Must Defer Its Decision On Certification Pending Discovery ................23

    b.   Plaintiff's Class Definition is Manageable Because California Law Applies................24

    c.   Plaintiff Adequately Pleads the Predominance Requirement of Rule 23..................24

V. CONCLUSION..........................................................................................................25

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                                              **Page**

3

4    Alaska Packers Assn. v. Industrial Accident Comm'n, 294 U.S. 532 (1935)......................7

5    Allstate Ins. Co. v. Hague, 449 U.S. 302, 315, 317-318 (1981.............................7, 11, 14

6    Am. Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir. 1996).........................................23, 24

7    American Philatelic Soc. v. Claibourne, 3 Cal.2d 689, 698-99 (1935)....….................….....2

8    A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (Cal. Ct. App. 1982)...........22

9    Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2011 WL 2111796
       (N.D. Cal. May 26, 2011)...........................................................................16

10   Barry v. Blue Cross of California, 805 F.2d 866, 872 (9th Cir. 1986)..............................3

11   BBG Communications, Inc. v. USDC-CASD, No. 11-71085 (9th Cir., July 5, 2011)..............9

12   Bigio v. Coca-Cola Co., 97 CIV. 2858 (BSJ), 2005 WL 287397, *3
       (S.D.N.Y. Feb. 3, 2005) rev'd and remanded, 448 F.3d 176 (2d Cir. 2006)................8

13

14   Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469 (1947)............................................7

15   Cel-Tech. 20 Cal. 4th at 184.................................................................…......19

16   Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121 (9th Cir. 2010) ..............4

17   Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 379 (N.D. Cal. 2010)...............18

18   Checking Account Overdraft Litig., 694 F. Supp. 2d 1302, 1318-1319
       (S.D. Fla. 2010) .....................................................................................20

19

20   Church v. Consol. Freightways, C-90-2290 DLJ, 1992 WL 370829 at *5
       (N.D. Cal. Sept. 14, 1992)...........................................................15, 17, 18

21   Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 613 (Cal. Ct. App. 1987).....…......6, 24

22   CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010)...............................11

23   Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 616 (Cal. Ct. App. 1987).....14, 15, 17

24   Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976)......................8

25   Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1202-07
       (S.D. Cal. 2007) ....................................................................................15

26   Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363 (2000)....................................18

27   Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 997-98 (9th Cir. 2010).....................…...4

28

iii

Dependable Highway Express, Inc. v. Navigators Ins. Co.,
    498 F.3d 1059, 1067 (9th Cir. 2007) .................................................8

Ditropan XL Antitrust Lit., 529 F. Supp.2d 1098, fn. 3 (N.D. Cal. 2007)................14

Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir.1977)................24

Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.,
    949 F. Supp. 1123, 1129 (S.D.N.Y. 1997)..................................13

Eminence Capital, LLC v. Aspeon, Inc., 317 F.3d 1048, 1052 (9th Cir. 2003) .................25

Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n. 8
    (9th Cir. 2003).................................................19

Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 (C.A.D.C.1993)................5

Evans v. BBG Communications, Inc., 10-CV-0542 H NLS, 2010 WL 5901096 at *3
    (S.D. Cal. Nov. 17, 2010).................................. 3, 9, 23

Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD, 766 F. Supp. 2d 1122, 1133
    (W.D. Wash. 2011).................................................18

Ferguson v. Friendfinders, Inc., 94 Cal. App. 4th 1255, 1269, 12661-1663
    (Cal. Ct. App. 2002).................................................16, 17

Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 451 (1979) ...........................13

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)......................23

Hanlon v. Chrysler Corp. 150 F.3d 1011, 1019 (9th Cir. 1998)...................................25

Hartford Fire Ins. Co. v. California, 509 U.S. 764, 799 (1993) .....................................8

Healy v. Beer Inst., Inc., 491 U.S. 324, 326 (1989)...................................................18

Hilton v. Gilot, 159 U.S. 113, 164 (1895) ................................................8

Hurtado v. Superior Court, 11 Cal.3d 574, 580 (1974) ................................14

Jordan v. Paul Fin., LLC, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010)........................19

Kamm v. California City Development Co., 509 F.2d 205, 210 (9thCir.1975) ...............23, 24

Keilholtz v. Lennox Hearth Products Inc., 268 F.R.D. 330, 341 (N.D. Cal. 2010) ..........12, 18

Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)................................10

Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005)..............................................16

Krish v. Balasubramaniam, 2007 WL 1219281, at *9 (E.D. Cal. Apr. 25, 2007) ................9

Lazar v. Trans Union LLC, 195 F.R.D. 665, 668 (C.D. Cal. 2000)................................16

Liew v. Official Receiver & Liquidator (Hong Kong), 685 F.2d 1192, 1197
       (9th Cir. 1982)......................................................................13

Mattel, Inc., 588 F. Supp.2d 1111, 1119 (C.D. Cal. 2008)......................................14

Mazza v. Am. Honda Motor Co., 254 F.R.D. 610, 624 (C.D. Cal. 2008).........................18

McCann v. Foster Wheller, LLC., 48 Cal.4th 68 (2010)...........................................15

Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 & n. 14 (11th Cir. 2008).......................23

Morrison v. Nat'l Australia Bank Ltd., 130 S. Ct. 2869, 2876-77,  2888 (2010).................4, 5

Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1134, 1155 (C.D. Cal. 2005)...........8

Mzamane v. Winfrey, 693 F. Supp. 2d 442, 469 (E.D. Pa. 2010...................................10

Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 62 (1st Cir. 1999) aff'd sub nom.........18

Nat'l Notary Ass'n v. U.S. Notary, D038278, 2002 WL 1265555 at *6
       (Cal. Ct. App. June 7, 2002)......................................................19

Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32 (2d Cir. 2010)....................4

OnStar Contract Litig., 600 F. Supp. 2d 861, 865 (E.D. Mich. 2009)............................9

Pac. Merch. Shipping Assn. v. Voss, 12 Cal. 4th 503, 517 (1995)...............................17

Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 599 (C.D. Cal. 2008).....................18

Pasquantino v. United States, 544 U.S. 349, 352 (2005)..........................................5

People ex rel. Brown v. PuriTec, 153 Cal. App. 4th 1524, 1531 (Cal. Ct. App. 2007)........17

Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 926 (1985).......................................22

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985)......................................11

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260 (1981)...........................................9

Pittman v. E.I. du Pont de Nemours & Co., Inc., 552 F.2d 149 (5th Cir.1977)..................23

v

Premier Wine & Spirits of S. Dakota, Inc. v. E. & J. Gallo Winery, 644 F. Supp. 1431,
    1440-41 (E.D. Cal. 1986)..............................................................................20

Reich v. Purcell, 67 Cal.2d 551 (1967)..................................................................11

Republic of Turkey v. OKS Partners, 146 F.R.D. 24, 27 (D. Mass. 1993)....................10

Rosenthal v. Warren, 475 F.2d 438 (2d Cir. 1973), cert. denied, 414 U.S. 856 (1973)........7

Royal and Sun Alliance Ins. Co. of Canada, 466 F.3d 88, 92 (2d Cir. 2006)....................8

Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)...........................4

Safjr v. BBG Communications, Inc., 10-CV-2341 H NLS, 2011 WL 902296,
    *3, fn. 3 (S.D. Cal. Mar. 15, 2011).......................................................3, 9, 19, 23

Sarei v. Rio Tinto PLC., 221 F. Supp. 2d 1116, 1202 (C.D. Cal. 2002)........................7, 8

Sarei v. Rio Tinto, PLC., 456 F.3d 1069 (9th Cir. 2006)..........................................8

Sarei v. Rio Tinto, PLC, 487 F.3d 1193, 1211 (9th Cir. 2007)..................................7, 8

Sarviss v. General Dynamics Information Tech., 663 F.Supp.2d 883, 900-901 ........................18

Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1154, 1163-1170 (Cal. Ct. App. 2000)........... 2, 19

Simon, 153 F.3D 991, 999 (9th Cir. 1998) ...........................................................9

Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th 1463, 1480 (Cal. Ct. App. 2005) ........20

Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 562 (1998) ..................21

Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1264 (9th Cir. 1978) ............10

Sullivan v. Oracle Corp., S170577, 2011 WL 2569530 11, fn 10 (Cal. June 30, 2011)..............6

Sunstar, Inc. v. Alberto-Culver Co., 586 F.3d 487, 495 (7th Cir. 2009)
    cert. denied, 130 S. Ct. 3287 (U.S. 2010) ...................................................10

Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) ...............21

Thomas v. Sprint Solutions, Inc., 2010 WL 1263189, at *7
    (N.D. Cal. March 30, 2010.................................................................12

Thomasson v. GC Services Limited Partnership, 2011 WL 1339063, at *6
    (S.D. Cal. February 8, 2011)...............................................................25

vi

Thom Hill Pub. Co. v. Gen. Tel. Elecs. Corp., 594 F.2d 730,733 (9th Cir. 1979)..........................4

Tobacco II Cases. 46 Cal. 4th 298, 312 (2009)................................................................14

Toyota Motor Corp., 8:10-ML-02151-JVS-FM, 2011 WL 1485479
    (C.D. Cal. Apr. 8, 2011) .............................................................................5

Toyota Motor Corp., 2011 WL 1485479 at *20.........................................................7

Troyk v. Farmers Group, Inc. 171 Cal.App.4th 1305, 1335(2009)..............................19

Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of
    Adjustment, Cent. Region, 130 S. Ct. 584, 596 (2009) ............................................3

Universe Sales Co., Ltd. v. Silver Castle, Ltd., 182 F.3d 1036, 1038 (9th Cir. 1999)...............10

Util. Consumers' Action Network v. Sprint Solutions, Inc., C07-CV-2231-W RJB,
    2008 WL 1946859 (S.D. Cal. Apr. 25, 2008)..................................................20

Vasquez v. Superior Court (1971) 4 Cal.3d 800, 808 [911 Cal.Rptr. 796,
    484 P.2d 964, 53 A.L.R.3d 513])....................................................13

Vinole v. Countrywide Home Loans, Inc. 571 F.3d 935, 941, 944 (9th Cir. 2009).....................23

Von Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010).............19

Walmart Stores, Inc. v. Dukes, 564 US ---, 10 (2011).....................................................23

Warren v. Fox Family Worldwide, Inc., 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001)
    aff'd, 328 F.3d 1136 (9th Cir. 2003)......................................................16, 22

Wershba v. Apple Computer, Inc. 91 Cal.App.4th 224, 241, 242 (2001).......................5, 6, 18

Williams v. Gerber Prods. Co.,555 F.3d 934, 938 (2008).............................................19

Wolph v. Acer Am. Corp., 272 F.R.D. 477, 486 (N.D. Cal. 2011)................................14, 18

Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1187 (9th Cir. 2001).....................11

PLAINTIFFS' OPPOSITION TO BBG COMMUNICATION, INC.'S MOTION TO DISMISS FAC

**Statutes/Codes/Authorities**

Cal. Bus. & Prof. Code § 17200 (West)...................................................................12

Cal. Bus. & Prof. Code § 17208 (West)...................................................................12

Cal. Bus. & Prof. Code § 17900.............................................................................20

Cal. Bus. & Prof. Code § 17900(a)(1)(West)...........................................................20

Cal. Bus. & Prof. Code § 17910(a) (West)...............................................................20

Cal. Civ. Code § 1770 (West)................................................................................12

Cal. Civ. Code ¶ 1770(a)(19).................................................................................13

Cal. Civ. Code § 1783 (West)................................................................................12

Cal. Code of Civ. Proc. 1670.5(a)..........................................................................13

Fed.R.Civ.P. 12(b)(6)............................................................................................4

Fed. R. Civ. P. 23©(1)(C)....................................................................................25

Foreign Relations Law Restatement § 403(2)............................................................8

28 U.S.C. § 1332(d)(2).........................................................................................3

47 C.F.R § 61.3(y)..............................................................................................21

**Other Authority**

John R. Brown, 44.1 Ways to Prove Foreign Law, 9 Mar.Law. 179, 180 (1984)....................10

## I.   INTRODUCTION

This is a class action brought by Plaintiff Nicolas Wood ("Plaintiff" or "Wood") on behalf of a class of BBG Communications, Inc. ("BBG" or "Defendant") customers alleging omissions of material fact in connection with BBG's sale of telecommunications services.   Plaintiff does not challenge the reasonableness of BBG's rates, but rather the deceitful, unlawful, unfair, and unconscionable manner in which BBG induces consumers into paying them.  The extraordinarily high rates and unheard-of connection fees establish materiality.

On August 13, 2010 Plaintiff used a payphone to make five (5) telephone calls to Canada from Hong Kong International Airport.  First Amended Complaint ("FAC") ¶ 102.  BBG, as a result of its unlawful scheme and false advertising disseminated from its California headquarters, did not disclose anywhere on or through the payphone that it provided card-swipe services for the payphone, nor did it disclose any rate or fee information.  Consequently, Mr. Wood had no way of knowing that he would be charged any connection fees at all, or any rates higher from those advertised by the owner of the payphone, Hong Kong Broadband Network ("HKBN"). *Id.* ¶ 104. Following the instructions on the payphone, Mr. Wood picked up the handset, swiped his credit card, and dialed the numbers.  *Id.* ¶ 105.  At no point before or after he swiped his credit card, did BBG prompt him in any way for the option of obtaining rate information.  *Id.* ¶¶ 106.

Upon subsequently reviewing his credit card statement, Wood discovered that he had been charged $261.40 (for 51 minutes total calling time) for the five calls. *Id.* ¶ 105, 107.  His credit card statement identified the entity responsible for the charge as "CALL FROM CHINA AUG 12 800 608 0575."  *Id.* ¶ 107.  Upon calling 800-608-0575, a customer service representative for International Satellite Communications ("ISC") (one of BBG's many fictitious business names ("FBN") *Id.* ¶ 38) picked up on the other end.  *Id* ¶ 108.  The ISC representative explained that for each call, ISC charged Wood a $10 connection fee and $3.98 per minute, even for the two (2) calls that went straight to voicemail.  *Id.* ¶ 109.  The ISC representative could not explain how Wood could have obtained the rate and fee information prior to initiating his calls.  *Id.* ¶ 111.  Wood demanded a partial refund, but BBG (still only known to Wood as ISC) denied his request.  *Id.* at

110. Up to this time, Wood still did not know that BBG was the entity responsible for his calls, and despite conducting his own research, was unable to identify BBG as the wrongdoer such that he could submit a complaint. *Id.* ¶ 151. Had BBG disclosed the fee and rate information, Plaintiff would not have used BBG's services. *Id.* ¶ 112.

BBG's entire motion is premised on the mistaken assumption that the conduct at issue took place outside of California. Not so. As Plaintiff has alleged and explains below, BBG created its unlawful scheme and disseminated the material omissions from its California headquarters. *Id.* ¶¶21-25, 29-33. Indeed, BBG admits in court filings that it "contracts with various third parties throughout the world (including foreign telephone companies)" through its alter egos. *Id.* ¶ 27.

Tellingly, BBG makes <u>no attempt</u> to explain why it has registered forty-four (44) fictitious business names "FBN" in San Diego County. *Id.* ¶¶ 38-82. A FBN is only required to be registered if a company "transacts business" under that name. By registering the FBNs, BBG admits that it "transacts business" in California for calls placed in Asia (FAC ¶ 62), Europe (FAC ¶¶50-54, 57), North America, Mexico, the Caribbean, and other international locations. Furthermore, BBG is a closely-held corporation owned by the Galicot brothers, who developed the unlawful scheme in and orchestrate it from California. *Id.* ¶¶ 7-9, 21-23, 28-34.

BBG enjoys the reputation of being a California company, and instructs its call-center representatives to identify BBG as a California-based company. *Id.* ¶¶ 28, 108. It also enjoys the benefits and protections of California law by insisting on California law as the choice of law and San Diego as the venue in both its Privacy Policy and agreements with its agents. *Id.* ¶¶ 18, 20, 28. Now, when California law has become inconvenient, BBG attempts to side-step the obligations of California law by pointing the finger at its alter ego and agent BBG Global AG. "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one" *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1154 (Cal. Ct. App. 2000) quoting, *American Philatelic Soc. v. Claibourne*, 3 Cal.2d 689, 698-99 (1935).

1    BBG's subject matter jurisdiction argument misconstrues the law and is merely an attempt to
2    introduce facts extrinsic to the FAC, which the Court must ignore.  California law clearly applies to
3    this action, and Plaintiff has sufficiently pled all of his claims and with the requisite particularity.
4    This Court has already found nearly identical allegations sufficient on two occasions in *Evans v.*
5    *BBG Communications, Inc.* and *Safjr v. BBG Communications, Inc.*  The Ninth Circuit Court of
6    Appeals recently denied BBG's writ of mandamus in *Safjr. In Re BBG Communications, Inc.*, 11-
7    71085 (9th Cir., July 5, 2011).

8    BBG argues that omitting material information is the core of its business and it now seeks to
9    protect its dubious business interest of "non-disclosure."  This is not a legitimate business interest
10   any court should have a hand in protecting.  Nothing is to be lost by requiring a business to
11   disclose the fees it charges consumers.  Yet, allowing BBG to continue to operate as it does would
12   violate the public policies favoring consumer protection, competition, and consumer choice. "One
13   of the foundations of an ideal competitive market is the free flow of information to buyers and
14   sellers." *Barry v. Blue Cross of California*, 805 F.2d 866, 872 (9th Cir. 1986).  Plaintiff Wood
15   respectfully requests the Court deny BBG's motion to dismiss in its entirety.

16   **II.  THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA**

17   "Subject-matter jurisdiction properly comprehended… refers to a tribunal's "power to hear a
18   case." *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment,*
19   *Cent. Region*, 130 S. Ct. 584, 596 (2009)(citations omitted).  This Court has diversity jurisdiction
20   over Plaintiff's claims under the Class Action Fairness Act ("CAFA") based solely on the
21   following facts: (1) the class exceeds 100 members; (2) the amount in controversy exceeds $5
22   million; and (3) there is minimal diversity (Plaintiff is Canadian citizen and Defendant is a U.S.
23   citizen). See 28 U.S.C. § 1332(d)(2).    Plaintiff has pled all three of these jurisdictional
24   prerequisites.  FAC ¶¶ 5, 9, 84.  Glaringly, Defendant does not challenge any of the three facts
25   giving this Court jurisdiction under CAFA in its motion to dismiss. See ECF # 17-1 ("MTD").
26   Rather, Defendant misconstrues the concept of a "factual attack" on subject matter jurisdiction in
27   an attempt to introduce facts extraneous to the FAC.   The Court should exercise its CAFA

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1  jurisdiction over this case and reject Defendant's introduction of facts as procedurally improper.

2  See, Plaintiff's Objections to Defendant's Evidence and Request for Judicial Notice

3  ("Objections"), filed concurrently herewith.

4                       **a.  The Legal Standard for 12(b)(1) Motions**

5       A challenge to a party's assertion of subject matter jurisdiction can be either a "factual attack"

6  or a "facial attack." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a

7  facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on

8  their face to invoke federal jurisdiction." *Id*.  By comparison, in a factual attack, the challenger

9  disputes the truth of the allegations that, <u>by themselves</u>, would otherwise invoke federal

10 jurisdiction. *Id.* (emphasis added.)  The district court may review evidence beyond the complaint

11 only under a proper factual attack. See, *Thorn Hill Pub. Co. v. Gen. Tel. Elecs. Corp.*, 594 F.2d

12 730, 733 (9th Cir. 1979); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th

13 Cir. 2010)("The Court may not speculate as to the plausibility of the plaintiff's allegations").  At

14 most, BBG launches <u>facial</u> attack and ignores this well-settled distinction in a failed attempt to

15 submit untested contradictory evidence.  In reality, BBG argues the merits of extraterritoriality (a

16 merits question), the abstention doctrine of international comity, and choice of law – ***all of which***

17 ***are separate and distinct analyses from subject matter jurisdiction***. The Court should reject

18 BBG's evidence as improper as this Court clearly has subject matter jurisdiction, as well as on the

19 arguments raised in the accompanying Objections.

20                      **b.  Extraterritoriality**

21      First, BBG ignores United States Supreme Court authority holding that extraterritoriality is a

22 "merits question" with no bearing on a court's "power to hear the case." *Morrison v. Nat'l*

23 *Australia Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010);  *Norex Petroleum Ltd. v. Access Indus., Inc.*,

24 631 F.3d 29, 32 (2d Cir. 2010)("a statute's extraterritorial reach is properly analyzed as a merits

25 question pursuant to Fed.R.Civ.P. 12(b)(6), not as a question of subject matter jurisdiction")(citing

26 *Morrison*)[1].  To ask what conduct California law reaches, is to ask what conduct California law

27 _____
[1] See also, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 997-98 (9th Cir. 2010).

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1    prohibits.  Therefore, all evidence submitted by BBG in support of its extraterritoriality argument

2    under the guise of a 12(b)(1) factual attack must be excluded. The cases Defendant cites are not to

3    the contrary.   MTD at 8-9.    Second, the presumption against extraterritoriality does not apply

4    "when the conduct [at issue] occurs within the United States," and has lesser force when "the

5    failure to extend the scope of the statute to a foreign setting will result in adverse effects within the

6    United States." *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (C.A.D.C.1993);

7    see also, *Morrison*, 130 S. Ct. at 2888 (2010)(Breyer J. concurring)("state law… may apply to the

8    fraudulent activity alleged here to have occurred in the United States"). [2]

9        More specifically, the UCL and CLRA apply to BBG's conduct. *In re Toyota Motor Corp.*,

10   8:10-ML-02151-JVS-FM, 2011 WL 1485479 (C.D. Cal. Apr. 8, 2011).   In *In re Toyota Motor*

11   *Corp.*, plaintiffs from fourteen (14) countries brought UCL and CLRA claims against Toyota

12   Motor Sales USA in the Central District of California for Toyota's failure to disclose safety defects

13   in the vehicles plaintiffs purchased. *Id* at *3.  While the court ultimately dismissed the CLRA and

14   UCL claims on insufficiency of pleading, it opined that the "CLRA and UCL may be available to

15   non-California residents if those persons are harmed by wrongful conduct occurring in California."

16   *Id.* at *19 (citing *Wershba v. Apple Computer, Inc.* 91 Cal.App.4[th] 224, 242 (2001)). "*[A] foreign*

17   *plaintiff could state a CLRA or UCL claim based on California conduct having effects outside*

18   *California.*" *Id.* at 20. The Court went on to explain that:

19
20           In determining whether the UCL and CLRA apply to non-California residents,
             courts consider where the defendant does business, whether the defendant's
21           principal offices are located in California, where class members are located, and the
             location from which advertising and other promotional literature decisions were
22           made.

23   *Id.* As the California Supreme Court opined just weeks ago, where "the unlawful conduct that

24   formed the basis of the out-of-state plaintiffs' claims (i.e. fraudulent misrepresentation made to

25   ───────────────
     [2] Indeed, as Plaintiff has alleged, the illegal scheme giving rise to his claim - the non disclosure of material connection
26   fees and rate information - was disseminated by BBG from California, home to BBG's headquarters and the principal
     residence of its owners. BBG's "offense was complete the moment they executed their scheme [to defraud consumers]
27   inside the United States." *Pasquantino v. United States*, 544 U.S. 349, 352 (2005). The failure to apply the protections
     of the UCL and CLRA to BBG's conduct does not only affect those abroad, but will also have adverse effects within
28   the U.S. by allowing a U.S. company to defraud the citizens of the U.S. and its trading partners.

1  induce consumer transactions)" the application of California law is "justified." *Sullivan v. Oracle*

2  *Corp.*, S170577, 2011 WL 2569530, at *11, fn 10 (Cal. June 30, 2011) citing, with approval,

3  *Wersba*, 91 Cal. App.4th at 241-242; *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613

4  (Cal. Ct. App. 1987).[3]

5       Here, Plaintiff alleges: that "BBG Comm. acts as the carrier and international long distance

6  reseller to facilitate the contracts between BBG Holdings [now BBG Global AG]" and others (FAC

7  ¶ 26); BBG Communications, Inc's San Diego, California location is the headquarters for BBG's

8  worldwide operations and is home to the office of its president, secretary and other high-level

9  management personnel (*Id.* ¶ 29); BBG instructs its customer service representatives to expressly

10  identify BBG... as a California-based company; (*Id.* ¶ 108); [a]ll decisions about and acts related to

11  the unlawful, unfair, and fraudulent business practices… emanate from BBG's San Diego,

12  California headquarters (*Id.*);  "the point of dissemination of the omissions and misrepresentations

13  of material facts, policies, call flow designs, and call center scripts for BBG's payphone services

14  around the world is from BBG Communications, Inc's headquarters in San Diego, CA (*Id.* at ¶ 30);

15  BBG's Privacy Policy and the agreements between BBG and its worldwide agents contain

16  California choice-of-law and venue provisions (*Id.* ¶18, 20, 28 and FAC Ex. 7); the decisions of

17  how BBG conducts and operates its business(es), including, but not limited to, the decisions to

18  charge undisclosed connection fees and extraordinary rates are made in BBG Communications,

19  Inc's headquarters in San Diego, California (*Id.* at ¶ 31); BBG has registered numerous fictitious

20  business names in San Diego County, including names implicating that it conducts business in

21  California for calls originating in Europe, Asia, and the Caribbean (*Id.* ¶¶ 38-83); lastly, BBG

22  maintained the website www.internationalsatellite.com for the sole purpose of directing all

23  complaints about its services from all over the world to a California address and California fax

24  number (*Id.* ¶ 126). In addition, a significant number of Class members will be found in California

25  as BBG operates payphones in at least three major airports in California, and Californians will

26  _____

27  [3] Although the Court in *Sullivan* declined to extend the "unlawful" prong of the UCL to out-of-state residents based on the admittedly limited facts, it explained "the UCL might conceivably apply to plaintiffs' claims if their wages were paid (or unpaid) in California." *Sullivan*, at 10.

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

have been exposed to BBG's unlawful scheme while travelling across the United States and abroad. *Id.* ¶¶ 63, 64, 78, 79. In short, Plaintiff has "alleged with sufficient detail that the point of dissemination from which advertising and promotional literature *that [he]* saw or could have seen *is* California" (*In re Toyota Motor Corp.*, 2011 WL 1485479 at *20)(emphasis in original), and much more.[4]

Therefore, because extraterritoriality is not a factual attack and is a merits-based question, the Court cannot consider Defendant's evidence. Furthermore, because the alleged unlawful conduct occurred in California, BBG's extraterritoriality argument fails.

### c. International Comity

First, similar to Defendant's extraterritoriality argument, BBG conflates the abstention doctrine of comity with the completely separate analysis of subject matter jurisdiction. MTD at 7-9. "Declining to decide a question of law on the basis of international comity is a form of abstention..." *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1211 (9th Cir. 2007)(citations omitted). "When a court dismisses a complaint in favor of a foreign forum pursuant to the doctrine of international comity, it declines to exercise jurisdiction it admittedly has." *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d Cir. 2000). As such, because comity is distinct from a factual attack on subject matter jurisdiction, the Court should disregard Defendant's evidence.

Second, applying the comity analysis, Defendant's argument fails. As a threshold matter, Defendant fails to meet its burden or undertake a proper comity analysis. MTD at 10. "International comity is an affirmative defense; the party asserting comity as grounds for dismissal bears the burden of proof." *Bigio v. Coca-Cola Co.*, 97 CIV. 2858 (BSJ), 2005 WL 287397, *3 (S.D.N.Y. Feb. 3, 2005) *rev'd and remanded*, 448 F.3d 176 (2d Cir. 2006); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1155 (C.D. Cal. 2005).

---

[4] Even assuming, arguendo, that the conduct giving rise to Plaintiff's injury occurred outside of California, BBG's extraterritoriality argument fails. "Numerous cases have applied the law of a jurisdiction other than the situs of the injury where there existed some link between that jurisdiction and the occurrence." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 315 (1981). See also, *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469 (1947); *Alaska Packers Assn. v. Industrial Accident Comm'n*, 294 U.S. 532 (1935); *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir. 1973), cert. denied, 414 U.S. 856 (1973).

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1    "Comity is 'the recognition which one nation allows within its territory to the legislative,

2    executive or judicial acts of another nation, having due regard both to international duty and

3    convenience." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th

4    Cir. 2007)(citing *Hilton v. Gilot*, 159 U.S. 113, 164 (1895). [5] Extension of comity is a prudential

5    decision and is not "a matter of absolute obligation." *Id.*   As a "predicate" to the international

6    comity analysis, the Defendant must establish that a "true conflict" exists between domestic and

7    foreign laws.  *Sarei v. Rio Tinto, PLC*, 487 F.3d at 1211. Only if a true conflict exists, does the

8    court then consider the factors set out in the Foreign Relations Law Restatement § 403(2). *Id.* at

9    1212. "What is required to establish a true conflict *is an allegation that compliance with the laws*

10   *of both countries would be impossible.*" *Sarei v. Rio Tinto PLC.*, 221 F. Supp. 2d 1116, 1202

11   (C.D. Cal. 2002) *aff'd in part, vacated in part, rev'd in part sub nom. Sarei v. Rio Tinto, PLC.*, 456

12   F.3d 1069 (9th Cir. 2006) *opinion withdrawn and superseded on reh'g in part sub nom. Sarei v.*

13   *Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007) and *aff'd in part, vacated in part, rev'd in part sub*

14   *nom. Sarei v. Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007)(emphasis added). "No conflict exists,

15   for [comity] purposes, 'where a person subject to regulation by two states can comply with the

16   laws of both.'" *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 799 (1993)(citations omitted).

17   Defendant does not argue that the laws of any jurisdiction, including Hong Kong, *force it* to violate

18   California law.  MTD at 8-9.  As such Defendant has failed to establish the necessary prerequisite

19   of a conflict.  Furthermore, BBG is headquartered in California (FAC ¶ 29), the conduct at issued

20   occurred in California (*Id.* ¶¶ 29-33) and most of the witnesses (including all decision-making

21   BBG personnel) and relevant evidence are located in California. [6] Therefore, principles of comity

22   do not apply in this case and California is the proper forum in which to litigate Plaintiff's claims.

23

24   [5] Abstention on comity grounds is rare because federal courts are under a "virtually unflagging obligation
     ... to exercise the jurisdiction given them." *Royal and Sun Alliance Ins. Co. of Canada*, 466 F.3d 88, 92 (2d

25   Cir. 2006)(*citing Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). "[O]nly the
     clearest of justifications will warrant dismissal." *Id.*

26   [6] In addition, BBG cannot point to any civil or governmental proceeding pending in Hong Kong with which this case
     would interfere. *In re Simon*, 153 F.3d 991, 999 (9th Cir. 1998)(rejecting international comity argument where there

27   was "no proceeding pending" abroad. Indeed, the *Safir* case is pending in California. Therefore, principles of comity
     do not apply in this case and California is the proper forum in which to litigate Plaintiff's claims.

28

8

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**

166002

**d. Because California Has A Strong Interest In Regulating the Conduct of Companies Doing Business In This State, Applying California Law In This Action Does Not Violate The Due Process Clause**

Choice-of-law is not a basis upon which to dismiss an action. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981)("the need to apply foreign law... is not [alone] sufficient to warrant dismissal"). Not one of Defendant's cases supports the contention that a case must be dismissed if California law is found not to apply. MTD at 10-11. "Federal courts routinely apply the laws of other countries." *Krish v. Balasubramaniam*, 2007 WL 1219281, at *9 (E.D. Cal. Apr. 25, 2007).

As a preliminary matter, a choice of law determination is premature at the motion to dismiss stage. *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 865 (E.D. Mich. 2009)(declining to make choice of law determination at the pleading stage and ordering discovery on the issue); *Safjr v. BBG Communications, Inc.*, 10-CV-2341 H NLS, 2011 WL 902296, *3, fn. 3 (S.D. Cal. Mar. 15, 2011), *petition denied*, *In Re BBG Communications, Inc.*, No. 11-71085 (9th Cir., July 5, 2011) ("who performed the actual conduct and what law properly applies to the claims are questions that are more appropriate for resolution at summary judgment, after... discovery.").

Even if this Court were to undertake a choice-of-law analysis at this time, it would be brief, as BBG has failed to establish that a conflict even exists, much less that California does not have the greatest interest, or that California's laws would not be most impaired if California law were not applied. One court has already held that California law applies to BBG's nearly identical conduct. *Evans v. BBG Communications, Inc.*, 10-CV-0542 H NLS, 2010 WL 5901096 at *3 (S.D. Cal. Nov. 17, 2010)(ordering supplemental briefing on the choice-of-law issue and holding that California law applied in case against BBG by a non-California resident who used BBG payphone in the Bahamas).

**i.    Choice of Law Standard**

BBG fails to prove Hong Kong Law as required under Fed. R. Civ. Proc. 44.1. Under Rule 44.1, the law of the forum applies unless the foreign law proponent meets his burdens of: (1) raising the issue that foreign law may apply in an action; and (2) adequately proving foreign law to enable the court to apply it in a particular case. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 469

9

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**

(E.D. Pa. 2010). "A proper determination of the substantive conflicts of law issues requires that the judge have accurate knowledge of the suggested foreign law." John R. Brown, *44.1 Ways to Prove Foreign Law*, 9 Mar.Law. 179, 180 (1984). As a preliminary matter, BBG has not proved Hong Kong law. Indeed, BBG requests judicial notice of the Hong Kong Telecommunications Ordinance and merely states in its brief "Hong Kong... does not require any type of disclosures for long distance calls made from public payphones." MTD at 11. This is insufficient to prove foreign law. *Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999)("expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law"); *Republic of Turkey v. OKS Partners*, 146 F.R.D. 24, 27 (D. Mass. 1993)("It appears fairly universal that 'written or oral expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is proved'")(citing cases)[7]. Because BBG fails to prove Hong Kong law, and cannot make new arguments on reply, California law applies.

Even if the court undertakes a choice-of-law analysis, California law applies. As a general rule, a federal district court sitting in diversity applies the law of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision." *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978). The foreign law proponent bears the burden of proving that a foreign law applies. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

In order for BBG to meet its burden, it must satisfy California's three-step "governmental interest" analysis[8]: 1) establish that the laws differ as applied to the relevant transaction; 2) if the

---

[7] *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009) *cert. denied*, 130 S. Ct. 3287 (2010)("if the law to be applied is the law of a foreign country, even if it is an English-speaking country the legal system of which derives from the same source as ours—England—our courts routinely admit testimony by lawyers on the meaning of the foreign law.")

[8] BBG concedes that the governmental interest analysis applies, but continues to argue that Hong Kong law should apply on the basis that "the conduct at issue in Plaintiff's Complaint took place entirely in Hong Kong." (MTD at 10.) Even if that were true, which it is not, "California has specifically rejected the alternative 'place of the wrong' rule." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010) citing, *Reich v. Purcell*, 67 Cal.2d 551 (1967).

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1  laws differ, then the foreign law proponent must establish that a "true conflict" between the laws

2  exits in that each of the relevant jurisdictions has an interest in having its law applied (if only one

3  jurisdiction has a legitimate interest, there is a "false conflict"); if a true conflict exists, the foreign

4  law proponent must establish the foreign jurisdiction's interests would be more impaired if its law

5  were not applied. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).

6      As Plaintiff demonstrates above, BBG has "significant contact[s] or significant aggregation of

7  contacts, creating state interests, such that choice of [California] law is neither arbitrary nor

8  fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) citing *Allstate*

9  *Ins. Co. v. Hague*, 449 U.S. 302, 312-313 (1981).

10          ii.  **BBG Has Not Sufficiently Demonstrated That the Laws Are Materially**
11               **Different.**

12      If the Court were to compare the Hong Kong Telecommunications Ordinance ("HKTO") to

13  California law, it should find that the laws are not materially different.  Section 7M of the HKTO

14  expressly prohibits "**misleading and deceptive**" conduct in connection with providing

15  telecommunication services. See ECF # 17-10 at p. 13.[9]  Section 39A allows for a private right of

16  action for damages or injunctive relief by "anyone sustaining loss or damage" for a violation of

17  Section 7M within 3 years after the "commission of the breach." *Id.* at 54. Similarly, the UCL

18  prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue

19  or misleading advertising" (Cal. Bus. & Prof. Code § 17200 (West)) and the CLRA makes

20  unlawful "unfair methods of competition and unfair or deceptive acts or practices" (Cal. Civ. Code

21  § 1770 (West)).[10]  The UCL has a four-year statute of limitations (Cal. Bus. & Prof. Code § 17208

22  [9] Even more, the specific license which BBG should have from the Hong Kong Telecommunications Authority
23  pursuant to Section 7B and 8(a) or 8(aa) of the HKTO would further specify how tariffs should be disclosed. Section
     7F "Tariffs" of the HKTO states "a licensee shall publish tariffs in accordance with the requirements of its license or
24  directions made in writing by the Authority." ECF 17-10 at 11.  Therefore, BBG's misrepresents the HKTO  by
     stating it does not require the disclosure of rates and fees.  See also, Declaration of Andrew J. Kubik In Support of
25  Plaintiff's Opposition to BBG Communications, Inc.'s MTD ("AJK Decl."). Ex. 1, Office of the Telecommunications
     Authority "Code of Practice on Tariffs Display at Public and Private Payphone Locations."
26  [10] Defendant's reliance on the cases cited in fn. 2 of its brief is misplaced. MTD at 11 fn. 2.  Those three cases
     determined that it was sufficient under the circumstance to disclose that the charges would occur without disclosing the
27  specific amounts to be charged. *Thomas v. Sprint Solutions, Inc.,* 2010 WL 1263189, at *7 (N.D. Cal. March 30,
     2010)("[t]hus, the Court rejects [the] argument that these cases establish that a wireless carrier is never required to
28  disclose the amount of any fee, regardless of whether it originates with the carrier or is related to taxes or other

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1   (West)) and an action under the CLRA must be brought within three years "from the date of the

2   commission of such method, act or practice." Cal. Civ. Code § 1783 (West).

3      Second, BBG's analysis is fundamentally flawed for failing to make an apples-to-apples

4   comparison.   Plaintiff alleges claims under consumer protection laws, not directly under

5   telecommunications laws.   Therefore, the only appropriate comparison is to Hong Kong's

6   consumer protection laws: the Supply of Services (Implied Terms) Ordinance and the

7   Unconscionable Contracts Ordinance. See AJK Dec. Ex. 2 and 3.   If such an analysis were

8   undertaken, BBG could still not demonstrate a material difference in the law sufficient to proceed

9   to the second step.  *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal.

10  2010)(applying California law to a nationwide class after considering defendant's appendix

11  detailing the consumer protection and unjust enrichment laws of 50 jurisdictions and holding that

12  "[d]efendants have not met their burden of showing that the differences between California

13  [consumer protection and unjust enrichment] law and that of the other jurisdictions are material").

14     Hong Kong's Supply of Services (Implied Terms) Ordinance ("SSO") is a consumer

15  protection statute that applies to consumer service transactions, such as telecommunication

16  services.  See AJK Decl. Ex.  2.   Section 7 of the SSO imposes in every service contract "an

17  implied term that the party contracting with the supplier will pay a ***reasonable charge***." (emphasis

18  in original).  *Id*.

19     Moreover, Section 5 of Hong Kong's Unconscionable Contracts Ordinance allows a court to:

20        refuse to enforce the contract; enforce the remainder of the contract without the
          unconscionable part; or limit the application of, or revise or alter, any
21        unconscionable part so as to avoid any unconscionable result.

22     See AJK Decl. Ex 3.[11]   Indeed, it is nearly identical to Cal. Code of Civ. Proc. 1670.5(a)

23  which is one of the bases for Plaintiff's UCL "unlawful" claim.[12] See also, Cal. Civ. Code §

24  1770(a)(19)(making it illegal to insert an unconscionable provision into a contract).

25  _____

26  government-related fees.").  Plaintiff Wood alleges a failure to disclose the fees, and does not challenge the amount of
    the rates and fees.  The amount of the fees establishes materiality.
    [11] Furthermore, Hong Kong is a common law jurisdiction with claims for fraud, deceit, misrepresentation, and unjust
27  enrichment.  *Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.*, 949 F. Supp. 1123, 1129 (S.D.N.Y.
    1997).  BBG has made no effort to show that the common law of Hong Kong and California is materially different.

28

                                                12
                    **PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
    166002

Because BBG has failed to consider relevant law in Hong Kong, let alone show that the relevant laws of Hong Kong and California materially differ, the Court can end its analysis here.

### iii.    If A Conflict Were to Exist, California Has the Greatest Interest in Regulating the Conduct of Corporations Operating Within Its Borders

Should the Court continue to the second step of the choice-of-law analysis, it should find that no conflict exists, or that only a false conflict exists, because California has the greatest interest in having its law applied.

As preliminary matter, BBG cites **no authority** in support of its argument that Hong Kong has a greater interest than California is having its law applied. MTD at 12. The Ninth Circuit has held that the policies and interests of the foreign state can only be inferred from "decisional, constitutional and statutory law of that state." *Liew v. Official Receiver & Liquidator (Hong Kong)*, 685 F.2d 1192, 1197 (9th Cir. 1982). BBG offers nothing.

By contrast, California's interest is significant, and therefore greater.   The California Supreme Court has stated, "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society" (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [911 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]), we must effectuate the full deterrent force of the unfair trade statute." *Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442, 451 (1979).

The focus of the analysis is on the defendant. California has an interest in regulating businesses that operate within its borders and ensuring that these businesses comply with its laws. *In re Tobacco II Cases.* 46 Cal. 4th 298, 312 (2009). As Plaintiff has alleged, the conduct giving rise to his claim, and the claims of putative class members, emanates from BBG's California headquarters.   FAC ¶¶ 7-9, 21-23, 28-33.   "Because Plaintiffs have demonstrated that … the 'decisions regarding marketing, sales, and pricing' likely would have been made in California, California's interest in having its consumer protection laws applied… outweigh any other particular

---

[12] For whatever reason, BBG asks the Court to take judicial notice of Canadian law.  To the extent the Court considers it, the Court should also consider that the British Columbia Consumer Protection Act is almost verbatim of the CLRA. See AJK Decl. Ex. 5.

1  state's interest in having its laws applied." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 486 (N.D.
2  Cal. 2011). See also, *In Re Ditropan XL Antitrust Lit.*, 529 F. Supp.2d 1098, fn. 3 (N.D. Cal.
3  2007)("Because Alza's principal place of business is in California, it is reasonable to infer that
4  alleged misconduct occurred within California."); See *In re Mattel, Inc.*, 588 F. Supp.2d 1111,
5  1119 (C.D. Cal. 2008)(denying motion to dismiss UCL claim based on allegation that defendant's
6  executives were in California).  Furthermore, California's interest is even greater where, as here,
7  the alleged class includes California residents. *Allstate Ins. Co.*, 449 U.S. at 317-318.

8      Even if the HKTO might apply to Plaintiff's claim, the only conflict that exists is a "false
9  conflict."  A false conflict is one where the competing jurisdictions have conflicting laws, but the
10  foreign jurisdiction has no interest in applying its law under the facts alleged.  *Hurtado v. Superior
11  Court*, 11 Cal.3d 574, 580 (1974).  The existence of a false conflict ends the governmental interest
12  analysis.  Even if BBG's unsupported contention that Hong Kong has an interest in regulating
13  payphones in Hong Kong were true, BBG has not shown that Hong Kong has an interest in
14  regulating businesses based in California who develop unlawful schemes in California the result of
15  which is the dissemination of omissions and false advertising to Hong Kong.  Hong Kong might
16  have had an interest if BBG were organized under the laws of Hong Kong, but because BBG is a
17  California corporation, that conducts the core of its decision-making operations from San Diego,
18  CA, California laws apply.  Hong Kong has no interest in shielding a California corporation from
19  liability for unfair and deceptive practices that BBG disseminates from California, nor does it have
20  an interest in denying Plaintiff recovery under California law. *Clothesrigger, Inc. v. GTE Corp.*,
21  191 Cal. App. 3d 605, 616 (Cal. Ct. App. 1987)("California's more favorable laws may properly
22  apply to benefit nonresident plaintiffs *when their home states have no identifiable interest in
23  denying such persons full recovery*").  Furthermore, "even if other states have an interest in
24  applying their own law, this interest does not outweigh California's interest in facilitating a class
25  action." *Church v. Consol. Freightways*, C-90-2290 DLJ, 1992 WL 370829 at *5 (N.D. Cal. Sept.
26  14, 1992).  Defendant has not considered the class action procedure in evaluating the interests of
27  California over Hong Kong.
28

14
**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

iv.   The Unfair, Unlawful, Fraudulent, and Deceptive Practices Most Impair the Laws of California

If the Court finds that a true conflict exists, it should find that California's interest would be most impaired.  Under the third prong of the test, the task is "not to determine… the better or worthier rule, but rather to decide – in light of the legal question at issue and the relevant state interest at stake – which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case."  *McCann v. Foster Wheller, LLC.*, 48Cal.4th 68 (2010).  The relevant factors in deciding whether California's laws would be the most impaired are 1) the relative commitment of each jurisdiction to the rule; b) the history and current status of the rule; c) the function and purpose of the rule, and d) the relevant contacts.  *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1202-07 (S.D. Cal. 2007).  BBG fails to undertake an analysis of the relevant factors.  MTD at 13.  At best, BBG has only argued the "relevant contacts" factor, and in doing so misconstrues and misstates the facts of the FAC.  Plaintiff alleges that the conduct at issue, BBG's unfair, unlawful, fraudulent, and deceptive conduct, emanated from California.  Because BBG has not met its burden under any of the three prongs of the governmental interest analysis, California law applies.

## III.   PLAINTIFF HAS SUFFICIENTLY STATED HIS CLAIMS

For purposes of evaluating a motion to dismiss for failure to state a claim, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).  Because plaintiff is the master of the Complaint, the Court should not involve itself in tampering with the Complaint absent a strong reason for doing so.  *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 668 (C.D. Cal. 2000).  "The presence of factual disputes does not render the claims inadequately pled for purposes of" a 12(b)(6) motion.  *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011).  "Because Rule 12(b)(6) review is confined to the complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or

1   discovery materials)." *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D.

2   Cal. 2001) *aff'd*, 328 F.3d 1136 (9th Cir. 2003).

### a. BBG Is Responsible for the Non-Disclosures

4   Let us quickly dispense with BBG's spurious argument that Plaintiff has not identified BBG

5   as the entity responsible for the non-disclosures alleged in the complaint.  Paragraph 114 of FAC

6   expressly states "**WHO**: BBG Communications, Inc. and BBG Global AG, are the entities that

7   cause omissions to be disseminated to the point of purchase … As alleged herein, BBG Global AG

8   is an agent, successor and/or alter ego of BBG Communications, Inc."  FAC ¶ 114.  The FAC

9   alleges in excruciating detail the specific facts surrounding the non-disclosure.  FAC ¶¶ 115-121.

10  The allegation BBG seizes upon in an attempt to misconstrue the facts of the FAC is background

11  information which confirms that a caller has no way of identifying that "any entity other than

12  HKBN serviced the payphone" (FAC ¶ 103), and that rates different from those displayed by

13  HKBN might be charged.  BBG cannot, and does not, argue that it was HKBN who had the duty to

14  disclose BBG's rates and fees.

### b. The Dormant Commerce Clause Is Inapplicable Because the Wrongful Conduct Emanated from California

17  As a preliminary matter, Defendant fails to undertake the required analysis, laid out in one of

18  the cases upon which BBG relies, for whether the dormant commerce clause prohibits a regulation.

19  See, *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 12661-1663 (Cal. Ct. App. 2002)((1)

20  does the ordinance discriminate in favor of local businesses, or directly regulate or control

21  interstate commerce; and (2) is the burden clearly excessive in relation to the putative local

22  benefits).   "The party challenging the statute's validity bears the burden of showing

23  discrimination." *Pac. Merch. Shipping Assn. v. Voss*, 12 Cal. 4th 503, 517 (1995).

24  BBG does not specify which laws are subject to the dormant commerce clause, or how they

25  discriminate <u>in favor of</u> California businesses. MTD at 15-16.  Indeed, BBG does not and cannot

26  argue that a California consumer protection law that prevents deceptive practices by California-

27  based businesses favors California businesses over other businesses.  The relevant laws "apply

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1   equally to in-state and out-of-state actors." *People ex rel. Brown v. PuriTec*, 153 Cal. App. 4th

2   1524, 1531 (Cal. Ct. App. 2007).

3       California's consumer protection statutes regulate California businesses, such as BBG, and not

4   interstate commerce.   Nor does BBG argue, nor could it, that truthfulness and disclosure are

5   excessive burdens in light of the benefits of consumer protection.  *Ferguson*, 94 Cal.App.4th at

6   1269 ("truthfulness in advertising... does not burden interstate commerce at all 'but actually

7   "facilitates it by eliminating fraud and deception..."'; "nor do the statute's affirmative disclosure

8   requirements impose any appreciable burden")(citations omitted).

9       BBG's argument also fails because it misconstrues the allegations of the FAC and attempts to

10  introduce facts extraneous to the complaint.  MTD at 15-16.  Defendant consistently ignores the

11  fact that it is headquartered in California and its two principal owners and orchestrators of the

12  unlawful scheme reside and work in California.  FAC ¶¶ 7-9, 21-23, 28-33.  Furthermore, Plaintiff

13  alleges that Defendant disseminated the omissions of material facts from California and that the

14  unlawful scheme was developed and emanated from California.  *Id.*  Because California has an

15  interest in regulating businesses that operate within its borders, as is the case here, the dormant

16  commerce clause is inapplicable, and the application of California law to non-residents is

17  constitutional.  *Church v. Consol. Freightways*, C-90-2290 DLJ, 1992 WL 370829 at *6 (N.D. Cal.

18  Sept. 14, 1992)("California has an interest in addressing the alleged fraudulent conduct of its

19  residents").

20      Defendant also ignores the weight of authority applying California law to non-resident

21  plaintiffs.  The cases are legion.  See, *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605

22  (1987)(applying California fraud, negligent misrepresentation and unfair business practices laws to

23  non-residents where 1) defendants did business in California; 2) one defendant had its principal

24  place office in California; 3) a significant number of class members resided in California; and 4)

25

26

27

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1  the agents of one defendant who prepared the promotional and advertising literature at issue did so

2  in California)[13].

3      The cases BBG cites are inapposite because, unlike here, they concern conduct that occurred

4  wholly outside the borders of the regulating state.  See *e.g., Healy v. Beer Inst., Inc.*, 491 U.S. 324,

5  326 (1989)(law required "out-of-state shippers of beer to affirm... posted prices for products");

6  *Sarviss v. General Dynamics Information Tech.*, 663 F.Supp.2d 883, 900-901(C.D.Cal. 2009)(an

7  employment case interpreting, under an extraterritoriality analysis, whether California's wage and

8  hour law applied to work perform "almost entirely outside California" on behalf of a Virginia-

9  based employer); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 62 (1st Cir. 1999) *aff'd sub*

10  *nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)(addressing only whether the

11  "market participant" exception to the dormant commerce clause applies to the foreign commerce

12  clause); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1133

13  (W.D. Wash. 2011)(holding that choice-of-law directive in Washington statute imposing

14  Washington law without regard for choice-of-law principles violate dormant commerce clause).[14]

15

16

17

18  [13]  *Church v. Cons. Freightways, Inc.*, 1992 WL 370829 at *6 (applying California fraud and negligent misrepresentation law to non-residents); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 242 (2001)(applying
19  UCL and CLRA to non-residents where defendant's principal place of residence was in California "even though transactions may have occurred outside California"); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D.
20  Cal. 2008)(applying CLRA and UCL to non-residents where Defendant's relevant operations are in California); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 624 (C.D. Cal. 2008)(applying CLRA, UCL and California unjust
21  enrichment law to non-residents where "deceptive practices originate[d] in, and emanated[d] from, California"); *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 342 (N.D. Cal. 2010)(Applying CLRA, UCL, and
22  California unjust enrichment law to non-residents where a significant part of Defendant's operations took place in Canada, Washington, and Tennessee, in addition to California, and only "seventy-six percent [of the products at issue]
23  maintained a production connection to California"); *Wolph*, 272 F.R.D. at 486 (applying CLRA and UCL to non-residents whose transactions occurred outside California); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010)(same).
24  [14] Even if the Court were persuaded by Defendant's dormant commerce clause argument, part of Plaintiff's First Cause of Action is based on federal regulations that require disclosure, inter alia, of rates, terms, and conditions on BBG's
25  websites. FAC ¶¶ 145, 152-154. Although the "vehicle for [Plaintiff's] legal claim is a state statute (section 17200), the essence of [Plaintiff's] cause of action... concern[s] solely the enforcement of [] federal [regulations]." *Nat'l*
26  *Notary Ass'n v. U.S. Notary*, D038278, 2002 WL 1265555 at *6 (Cal. Ct. App. June 7, 2002)(unpublished). A federal district court "may consider unpublished state decisions." *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330
27  F.3d 1214, 1220 n. 8 (9th Cir. 2003).

28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

### c.  Hong Kong Law Does Not Provide A Safe Harbor Against the UCL

"An act or practice is 'unfair competition' under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice." *Troyk v. Farmers Group, Inc.* 171 Cal.App.4th 1305, 1335 (2009).  The Ninth Circuit has held that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.,*552 F.3d 934, 938 (9th Cir. 2008).

"There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010).  **"The safe harbor rule applies only where there is a law that expressly authorizes the activity."** *Id.* at 1076 citing, *Cel-Tech.* 20 Cal. 4th at 184 (emphasis added); *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010)(same).

BBG's "safe harbor" argument fails for two reasons.  First, BBG has failed to prove Hong Kong law under Rule 44.1. See Section II.D.i, above. Nothing in the HKTO expressly authorizes the non-disclosure of unconscionable rates, excessive connection fees, or charging both for unconnected calls, as plaintiff alleges. FAC ¶ 115. Second, BBG cites no authority that supports a finding that a foreign law can be the basis of a "safe harbor" defense. This Court has already held that there is no authority to support a finding "that a foreign statute can provide a safe harbor." *Safir v. BBG Communications, Inc.*, 10-CV-2341 H NLS, 2011 WL 902296 at *4 (S.D. Cal. Mar. 15, 2011).  "Courts [ ] may not create 'implied safe harbors.'" *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 804 (Cal. Ct. App. 2006).[15]

### d.  Plaintiff has Sufficiently Pled a UCL "Unlawful" Claim

An "unlawful business activity" includes "'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, C07-CV-2231-W RJB, 2008 WL 1946859 (S.D. Cal. Apr. 25, 2008). "Virtually

---

[15]  Even if the Court were persuaded by BBG's argument that the HKTO expressly permitted BBG's rates and connection fees (which it clearly does not), it could still find the lack of disclosure of those rates and fees to be unfair. See *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1163-1170 (2000)(holding that while the amount of the charge was not unfair because it was protected by statutory safe harbor, the manner in which defendant induced its customers could form an independent basis for a UCL claim).

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1   any law – federal, state or local – can serve as a predicate for a section 17200 action…[t]herefore, a

2   violation of a federal law or regulation 'may serve as a predicate for  UCL action.'" *Smith v. Wells*

3   *Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1480 (Cal. Ct. App. 2005)(citations omitted).

4       This Court has opined that "[a] claim for unlawful business act or practice could conceivably

5   be based upon the unconscionability section of the California Civil Code."  *Util. Consumers'*

6   *Action Network*, 2008 WL 1946859 at *2 (S.D. Cal. Apr. 25, 2008)(citing cases); see also,  *In re*

7   *Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1318-1319 (S.D. Fla. 2010); *Premier*

8   *Wine & Spirits of S. Dakota, Inc. v. E. & J. Gallo Winery*, 644 F. Supp. 1431, 1440-41 (E.D. Cal.

9   1986).

10       California's fictitious business name statute protects consumers by making "available to the

11   public the identities of persons doing business under the fictitious business name."  Cal. Bus. &

12   Prof. Code § 17900(a)(1)(West).  "Every person who regularly ***transacts business*** in this state for

13   profit under a fictitious business name shall… file a fictitious business name statement in

14   accordance with this chapter." Cal. Bus. & Prof. Code § 17910(a) (West)(emphasis added.)  By

15   registering the forty-four (44) FBNs, BBG admits that it "transacts business" in California in

16   connection with calls originating in Europe, Asia, North America, the Caribbean, and South

17   America. FAC ¶¶ 38-82. BBG charged Plaintiff under the fictitious business name "CALL FROM

18   CHINA." *Id.* ¶¶ 107, 151.  BBG has not registered this FBN (*Id.* ¶ 151), but, does "transact[]

19   business" under it in California. *Id.*  ¶¶ 108-111.  Plaintiff could not identify the entity operating

20   under "CALL FROM CHINA" by himself so that he could seek redress. FAC ¶¶ 83, 151.  BBG's

21   actions undermine the express purpose of Cal. Bus. & Prof. Code § 17900.  Therefore, BBG's

22   failure to register the FBN is an unlawful business practices under the UCL.

23       Defendant's argument that a predicate statute must provide a "private right of action" is

24   inapposite and ignores well-settled law. MTD at 18, fn. 5.  The California Supreme Court has

25   rejected this identical argument on several occasions. *Stop Youth Addiction, Inc. v. Lucky Stores,*

26   *Inc.*, 17 Cal. 4th 553, 562 (1998)(citing cases)(emphasis in original.) See also, *Sybersound*

27

28

1   *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)(plaintiff need not prove "that the

2   predicate law provides for a private right of action.").

3         Plaintiff's unlawful claim for violation of the Code of Federal Regulations ("CFRs") is also

4   actionable.  Defendant's attempt to side-step the Federal Communications Act ("FCA") by citing

5   to definitions fails as none of the definitions is relevant to the alleged violation. MTD at 19. BBG

6   does not argue that it is not subject to the FCA, because it cannot.  The CFRs apply to BBG

7   because it is a U.S.-based carrier subject to the FCA.[16]  Section 42.10(a) requires that "following

8   an inquiry or complaint from the public concerning rates, terms and conditions for such service, a

9   carrier shall specify that such information is available and the manner in which the public may

10  obtain the information."  47 C.F.R § 42.10(a)(2011).  When Plaintiff Wood complained to BBG

11  (indentifying itself as ISC (FAC ¶ 108)) about the rates, terms, and conditions of the service, BBG

12  was "unable to explain how he could have obtained the actual rate information." *Id.* ¶ 111.

13  Furthermore, Section 42.10(b) requires every "non-dominant IXC [interexchange carrier] that

14  maintains an Internet website [to] [] make such rate and service information ... available on-line at

15  its Internet website in a timely and easily accessible manner."  47 C.F.R. § 42.10(b)(2011).  BBG

16  maintains numerous websites (FAC ¶¶ 126, 154), none of which provides the required disclosures.

17  Therefore, Plaintiff has stated a UCL unlawful claim based on BBG's violation of federal

18  regulations requiring the disclosure of rates, terms, and conditions of service.

19       **e.  Plaintiff's CLRA Claim Based On Unconscionability Is Sufficiently Pled**

20        "[U]nconscionability has generally been recognized to include an absence of meaningful

21  choice on the part of one of the parties together with contract terms which are unreasonably

22  favorable to the other party." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Cal.

23  Ct. App. 1982).  A finding of unconscionability is appropriate "where it appears that had the party

24  actually been aware of the term to which he 'agreed' or had he any real choice in the matter, he

25

26  [16] BBG is a "non-dominant carrier" within the meaning of 47 C.F.R § 61.3(y)(2011) and holds international 214
     authority (See AJK Dec. Ex. 4 – License # ITC-214-19970718-00417) the granting of which required BBG to "certify
27  that it will comply with the terms and conditions contained in Sec. 63.21" which expressly requires that BBG "comply
     with all applicable public disclosure and maintenance of information requirements in Sec. [] 42.10."
28

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002

1  would never have assented to inclusion of the term." *Id*. at 490.   Plaintiff expressly pleads both

2  procedural and substantive unconscionability with regard to the <u>contract formation process itself</u>,

3  namely BBG's failure to disclose the terms of service, and that he would not have used BBG's

4  services had he known of the terms.  FAC ¶¶ 148-150.  Furthermore, "it is [also] clear that the

5  price term, like any other term in a contract, may be unconscionable." *Perdue v. Crocker Nat'l*

6  *Bank*, 38 Cal. 3d 913, 926 (1985).

7      Defendant devotes ten percent of its brief to this claim, most of which is spent reciting the

8  facts of the FAC and, impermissibly attempting to introduce facts contrary to the allegations of the

9  FAC. MTD at 19-21.  See also, *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d at 1062.

10  BBG argues that Plaintiff could not have been "surprised or oppressed" because he "could have

11  found out [the charge] by pressing '0.'"  *Id*. at 20. Not true.  Plaintiff expressly pleads that BBG

12  never prompted him to press "0" for rate and fee information (FAC ¶¶ 106, 111, 149).  Nor did

13  Plaintiff only expect to pay "less than $7." MTD at 20.  Plaintiff expressly pleads that "Mr. Wood

14  expected the maximum charge for his calls would to be HK$251 (US$33.15)." FAC ¶ 105.  BBG

15  argues that Plaintiff "fails to adequately allege that he really had a less expensive alternative."

16  MTD at 20, fn 7. Once again, not true.  Plaintiff expressly pleads that HKBN provided service

17  "from Hong Kong to Canada" (FAC ¶ 103), and that had he known of the unconscionable terms,

18  he would have used "the same telephone using HKBN as the long distance provider, and pa[id]

19  HKBN's substantially lower rates." FAC ¶ 148.[17]

20      **f.  Money Had and Received, Money Paid, and Restitution/Unjust Enrichment**

21      Plaintiff sufficiently pleads a cause of action for the common counts of money had and

22  received, money paid, and unjust enrichment.  FAC ¶¶ 177-183. This Court has found nearly

23  identical allegations sufficiently stated.  See, *Safjr v. BBG Communications, Inc.*, 10-CV-2341 H

24  NLS, 2011 WL 902296 (S.D. Cal. Mar. 15, 2011)(denying BBG's motion to dismiss common

25

26  [17] The rest of **BBG**'s arguments hardly warrant a response i.e. that "plaintiff knew he was going to pay something" hardly negates surprise at extraordinary rates and connection fees (**MTD** at 20), and that "it is [not] appropriate to
27  compare the cost of other telecommunications services" (*Id*. at 21) is unsupported with any factual or legal authority. Indeed, the law is to the contrary. *Perdue, supra*, at 926-27 (comparing alternatives is a factor in the analysis).
28

counts of money had and received, money paid, and restitution/unjust enrichment); *Evans v. BBG Communications, Inc.*, 10-CV-0542 H NLS, 2010 WL 5901096 (S.D. Cal. Nov. 17, 2010)(denying motion to dismiss plaintiff's implied contract claim).

## IV. BBG FAILS TO PROVIDE A BASIS UPON WHICH THIS COURT MAY DISMISS PLAINTIFF'S CLASS ALLEGATIONS

### a. The Court Must Defer Its Decision On Certification Pending Discovery

Certification of a class action is proper only if "the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Walmart Stores, Inc. v. Dukes*, 564 US ---, 10 (2011)(*citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)(emphasis added)). The Court cannot make such a "rigorous analysis" and dismiss Plaintiff's class allegations as discovery has not yet commenced in this case. The weight of Ninth Circuit and other federal case law requires that a district court defer its decision on class certification pending discovery. See, *Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 941 (9th Cir. 2009) ("pleadings alone will not resolve the question of class certification and [] some discovery will be warranted"); *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir.1975) (Discovery is warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist); See also, *Pittman v. E.I. du Pont de Nemours & Co., Inc.*, 552 F.2d 149 (5th Cir. 1977); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 & n. 14 (11th Cir. 2008); *In Re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996). In this case, no discovery has commenced.[18] Hence, the Court must deny BBG's request to dismiss Plaintiffs' class allegations on this basis alone.

The authority BBG cites actually supports the preservation of Plaintiff's class allegations. For example, in *Vinole*, the Court upheld the denial of class certification because plaintiffs did not demonstrate that they would suffer "procedural prejudice from the timing of the consideration [of class certification]." *Vinole*, 571 F.3d at 944. In this regard, the Court held that because "Plaintiffs had conducted significant discovery" and failed to demonstrate that they were "deprived of adequate time

---

[18] Denying discovery necessary to determine the existence of a class or set of subclasses would be an abuse of discretion. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir.1977).

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**

1   in which to complete discovery" before the defendant's brought their motion denying class

2   certification, denial of class certification was proper. *Id.* at 943. Unlike the *Vinole* plaintiffs who had

3   "conducted significant discovery", here, Plaintiff will clearly suffer "procedural prejudice" as Plaintiff

4   would be deprived of adequate time in which to conduct discovery. *Id.* Thus, under *Vinole*, this Court

5   cannot dismiss Plaintiff's class allegations as Plaintiff has suffered a "procedural prejudice" by not

6   being allowed time to conduct discovery prior to this Motion to Dismiss. *Id.* at 943; See also,

7   *Doninger*, 564 F.2d at 1313; *Kamm*, 509 F.2d at 210.

8          **b.  Plaintiff's Class Definition is Manageable Because California Law Applies**

9        In the instance that the Court were to certify Plaintiff's class action, it would consider only

10  California law and not the "laws each of the fifty states, the District of Columbia and undetermined

11  foreign countries", as BBG contends in its MTD. *Clothesrigger, Inc., supra*, 191 Cal. App. at 617

12  (rejecting identical manageability argument).  See also, fn. 13, above.

13         **c.  Plaintiff Adequately Pleads the Predominance Requirement of Rule 23**

14       First, BBG misinterprets Rule 23's predominance requirement.  Instead of analyzing whether

15  there are common issues of fact and law that predominate over individual issues, BBG argues that

16  Plaintiff cannot demonstrate that the omissions are the same for each class member. This analysis

17  reflects the Typicality requirement of Rule 23 rather than the predominance requirement. The

18  typicality requirement is "construed permissively" and "the existence of shared legal issues with

19  divergent factual predicates is sufficient." *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1019 (9th Cir.

20  1998).  Here, BBG failed to disclose material information regarding its telephone rates to Plaintiff,

21  Plaintiff was charged extraordinarily high rates and this same harm was suffered by other putative

22  class members.

23       Second, common issues of fact and law do predominate over individual questions in this case.

24  See, FAC at ¶ 132. All of Plaintiff's claims focus on the uniform manner which "BBG fails to

25  disclose material information at the point of purchase to consumers who it induces into purchasing

26  BBG's services to their detriment" (FAC at ¶ 113), and as a result of this conduct, whether BBG

27  violated the CLRA, UCL, and/or was unjustly enriched. Plaintiff is not required to allege that each

28

class member relied upon the same omission in order to satisfy the predominance requirement of Rule 23. *Thomasson v. GC Services Limited Partnership*, 2011 WL 1339063, at *6 (S.D. Cal. February 8, 2011). Although not required, Plaintiff alleges that BBG's omissions of Material Facts are nearly identical worldwide (FAC ¶ 132) and include a list of similar omissions (FAC at ¶ 123). The similarity is further supported by the facts of the *Safjr* case.

Lastly, even if this Court denies BBG's motion to dismiss class allegations, such decisions are tentative and the Court may revisit the issue of class certification. Fed. R. Civ. P. 23(c)(1)(C)("An order that grants or denies class certification may be altered or amended before final judgment"). Thus, for the reasons stated above, Plaintiff's class allegations are proper and must not be dismissed.

## V. CONCLUSION

For the foregoing reasons, BBG's MTD should be denied in its entirety.  To the extent the Court grants BBG's motion in any part, Plaintiffs request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 317 F.3d 1048, 1052 (9th Cir. 2003)(The policy in favor of permitting amendment is to be applied with "extreme liberality.").

DATED:  July 15, 2011                          EPPSTEINER & FIORICA ATTORNEYS, LLP


                                               By:     /s/  Stuart M. Eppsteiner
                                                       Stuart M. Eppsteiner, Esq.
                                                       Andrew J. Kubik, Esq.
                                                       Zelekha Amirzada, Esq.
                                                       Counsel for Plaintiff and the Putative Class

**PLAINTIFF'S OPPOSITION TO BBG COMMUNICATIONS, INC.'S MTD PLAINTIFF'S FAC**
166002