Stuart M. Eppsteiner, Esq. SBN 098973
sme@eppsteiner.com
Andrew J. Kubik, Esq. SBN 246902
ajk@eppsteiner.com
EPPSTEINER & FIORICA ATTORNEYS, LLP
12555 High Bluff Dr., Suite 155
San Diego, CA 92130
Telephone:      858-350-1500
Facsimile:      858-350-1501

Attorneys for Plaintiff and the Putative Class

Fred R. Puglisi, Cal. Bar No. 121822
fpuglisi@sheppardmullin.com
Norma Garcia Guillen, Cal. Bar No. 223512
ngarciaguillen@sheppardmullin.com
Valerie E. Alter, Cal. Bar No. 239905
valter@sheppardmullin.com
Elizabeth S. Berman, Cal. Bar No. 252377
eberman@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:      310-228-3700
Facsimile:      310-228-3701

Attorneys for Defendants BBG Communications, Inc.
and BBG Global AG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS WOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., BBG GLOBAL AG, and BBG HOLDINGS, LTD.,<br><br>Defendant. | Case No. 11CV0227 AJB (NLS)<br><br>CLASS ACTION<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**CMC**<br>**Date:  1/13/12**<br>**Time:  9:45 a.m.**<br>**Judge: Nita L. Stormes**<br>**Courtroom: G** |

Pursuant to the Court's December 12, 2011 Minute Order, Plaintiff and Defendants BBG Communications, Inc. ("**BBG Communications**") and BBG Global AG ("**BBG Global**" and collectively referred to as "**Defendants**") hereby submit their Joint Case Management Statement.

**1.**     **PROPOSED DISCOVERY PLANS**

    **a.**     **Plaintiffs' Proposed Discovery Plan**

The parties differ on how they propose discovery be conducted.  Plaintiff believes no restriction should apply to discovery and Defendants want to trifurcate discovery.  If discovery is truncated, whether bifurcated or trifurcated, discovery will be performed in sequence instead of parallel or simultaneously.  This will necessarily consume, assuming Defendants' Motion for Summary Judgment ("MSJ") is denied, more time before Plaintiff can complete Motion for Class Certification ("MCC") and Trial discovery; resulting in MCC and Trial dates that are extended from those Plaintiff originally proposed and the Court indicated in its Order Following Early Neutral Evaluation Conference.

Defendant proposes initial disclosures be deferred until after its Motion for Summary Judgment ("MSJ") is heard.  Plaintiff opposes this as initial disclosures require parties to disclose facts, witnesses and documents that support their "claims *or defenses.*"  FRCP 26(a)(1)(A)(Emphasis Added.)  If Defendants are not required to make their initial disclosure now, Plaintiff will be deprived of his right to know the facts, documents and witnesses that Defendants claim support their defense that this Court lacks jurisdiction or that BBG Global AG is not the alter ego of BBG Communications, Inc., which issues are the likely to be crux of Defendants' MSJ.  If the Court were to delay the parties' initial disclosures, as Defendants propose, Plaintiff would be prejudiced. Plaintiff proposes that initial disclosures be served immediately.

Plaintiff has already served his first Rule 34 request for production to BBG Communications and BBG Global AG.  Also, Plaintiff has already served subpoenas on third parties.

If the court truncates discovery, as Defendants propose, into MSJ jurisdiction and alter-ego discovery, followed by MCC discovery, followed by merits discovery, resolution of the case will suffer from certain delay.  Plaintiff does not oppose restricting pre-MSJ discovery to those issues

raised by Defendants' MSJ, including, but not limited to, alter-ego, jurisdiction, and significant merits issues, such as application of the safe harbor doctrine to Plaintiff's Bus. & Prof. Code 17200 claim, extraterritoriality (See *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010);  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010)("a statute's extraterritorial reach is properly analyzed as a merits question"), and whether rates and fees were adequately disclosed or would have deceived a reasonable consumer acting reasonably under the circumstances.

### i.   **Initial Discovery (Pre-MSJ)**

The Court and counsel discussed Defendants' intention to file MSJ motions based on jurisdiction, extraterritoriality, alter ego and defendants' adequacy of disclosure of rates and fees. Counsel had additional discussions on the scope of Defendants' MSJ before completing this report.  Counsel for BBG indicated that any MSJ would be similar in scope to the one filed in the related *Sajfr* case, which involved jurisdictional and merits issues.  Plaintiff expects that he will not conclude his alter-ego and jurisdiction discovery until June 30, 2011.  Plaintiff has considered the alter-ego and merits discovery he would need to conduct and it is extensive, as the alter ego analysis is inherently broad in scope.  *See Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 838-841 (1st Dist.1963) (discussing the various factors in determining whether to disregard the corporate entity including, *inter alia*: the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family [citations]; the use of the same office or business location; the employment of the same employees and/or attorney [citations]; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation [citations]; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities [citations]; the disregard of legal formalities and the failure to maintain arm's length relationships

among related entities [citations]; the use of the corporate entity to procure labor, services or merchandise for another person or entity [citations]; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another [citations]; the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions [citations]; and the formation and use of a corporation to transfer to it the existing liability of another person or entity [citations]). (internal citations omitted.)

Based on these and other factors enunciated by the courts, the scope and volume of discovery includes, but is not limited to: the production of records regarding the formation, operation, and management of the BBG entities; the formation of the Galicots' Trusts (which Trusts own the BBG entities); the capitalization of BBG Global; the income and expenses, assets and access to capital of the BBG entities; the financial institution records of the Galicots, the BBG entities, the Galicots' Trusts, and the principal operators of the BBG entities, brothers Rafael and Gregorio Galicot (who are also co-trustees of their respective Galicot Trusts); the tasks conducted by each entity with respect to a given telephone transaction; decision making and control at the BBG entities by the Galicots; the location where business is actually conducted; and whether the formation of BBG Global stemmed in any way from an attempt to avoid civil or criminal liability, including tax liability following the Galicots' IRS audit or illegal transactions such as the one at issue in this case

The flow chart below is a limited understanding of the individuals, trusts and entities involved in the facts of this case.  The Galicots are co-trustees with their wives of two family trusts that own all or majority shares of Defendants, who in turn own all or majority shares of other entities. (It has also come to Plaintiff's attention that defendant BBG Communications has recently transferred ownership of subsidiary Faircall Corporation, a long-distance reseller, to two irrevocable trusts for the benefit of the Galicots' children.):



Also, with regard to the jurisdictional issues, the scope of discovery will include, but is not limited to: whether BBG Global AG conducts business in California; the minutes and agendas of the BBG entities management and board meetings; the travel records of Rafael and Gregorio Galicot, Irene Fedier, and Pilar Urbino, and other BBG employees and board members; the phone records of Gregorio and Rafael Galicot and the BBG entities; loans and credit agreements for Rafael and Gregorio Galicot, the Galicots' Trusts and the BBG entities; the agreements between the BBG entities, the Galicots' Trusts and Rafael and Gregorio Galicot, on the one hand, and companies that perform phone services for them and facility owners or operators (e.g., owners and operators of airports, train stations, bus stations and other transportation facility operators) on the other hand; a list of all master and sub agents that allegedly solicit and obtain agreements from facility operators for any of the BBG entities; the location of the creation of BBG's scheme to

defraud consumers through non-disclosure of material information; the location of the creation and dissemination of payphone artwork, the location of BBG Global's bank accounts and other assets in California; and communications in California between the Galicots and master agents living in California, such as Salvador Lombrosso, regarding properties allegedly serviced BBG Global, such a Leipzig airport in Germany

In addition to this written discovery, Plaintiffs will subpoena Rafael and Gregorio Galicot's, the BBG entities' and the Galicot Trusts' records from at least Wells Fargo Bank and likely other financial institutions once Plaintiff knows the identity of the financial institutions in or through which the Galicots' Trusts, the BBG entities and Rafael and Gregorio Galicot conduct financial transactions.  Plaintiff will subpoena BBG, the Galicots' Trusts and Rafael and Gregorio Galicot accountant's records regarding BBG entities, the Trusts and the Galicots.

Plaintiff also intends to take the depositions of: 1) Rafael Galicot; 2) Gregorio Galicot 3) 30(b)(6) deposition on various relevant categories of BBG Communications, Inc.; 4) 30(b)(6) Depositions of on various relevant categories of BBG Global AG; 4) Pilar Urbino – the original manager of BBG Global until 2009 when she resigned; 5) Salvador Lombroso – a master agent of BBG Global residing in California who conducted extensive negotiations with Gregorio Galicot in California about properties in Europe; 6) Ricardo Singer – owner of Sincrop Enterprises which lists BBG Comm's San Diego address as its own on public filings and on whose behalf BBG's general counsel Cristina Rodriguez-Rios signed fictitious business name statements with the San Diego County Recorder's office; 7) Luis Maizel – co-owner with the Galicots of BBG Comm's physical business address; a possible investor in the BBG entities and officer of BBG Comm; 8) Jack Maizel – California resident and son of Luis Maizel and past and/or current part owner of BBG Global AG; 9)  certain current and former middle and upper management personnel of the BBG entities; 10) the trustees of the Trusts that own the BBG entities; 11) Wells Fargo personnel familiar with the BBG Entities, the Trusts and the Galicots' banking business with Wells Fargo; 12) personnel familiar with BBG's customization of operator services at Network Operator Services, Inc./Centris Information Services; 13) Brian Rhys – high level manager who negotiated agreements on behalf of the BBG entities and may have been involved in the customization of

operator services; 14) David Adler – a California resident who allegedly contracts with payphone owners in territories serviced by BBG Global; 15) Denise Galicot – controller of BBG Comm; 16) Cristina Rodriguez-Rios general counsel of the BBG entities who claims to have negotiated agreements from California on a worldwide basis; and 17) the BBG entities' auditors and accountants.   Therefore, Plaintiff proposes that the Court permit up to 25 depositions. The foregoing is the scope of discovery Plaintiff presently expects to conduct to prepare himself to oppose Defendants' MSJ and demonstrate that this Court has jurisdiction over Defendants, that Defendants are alter egos of each other, and that Defendants' non-disclosure of rates and fees is likely to deceive a reasonable consumer, is unfair, unlawful, and unconscionable.   The Galicots' decisions to create a complicated scheme to defraud consumers necessitate detailed discovery.

As to the merits issues raised by the MSJ, Plaintiff will have to examine BBG's payphone artwork, call center scripts, employee handbooks, and other instructions or directives regarding how rates and/or fees are to be disclosed, if at all.   Plaintiff will also need to examine and subpoena third parties on the volume of complaints and chargebacks registered against BBG. Plaintiff will have to examine the location of call rating, artwork design, artwork dissemination, and operations management.

By conducting the discovery described, above, Plaintiff anticipates he will learn of documents and witnesses presently unknown which will necessitate additional discovery.

Prior to filing this propose scheduling order, Plaintiff described to BBG's counsel much of the discovery described above and discussed the same.   From that discussion Plaintiff's counsel understand that they will get some of the information without dispute, but there will be disputes regarding: a) the discovery of the Galicots' Trusts and Rafael and Gregorio Galicot's financial information and bank records, and b) the contracts with facility operators and sales agents..   If these areas of disputed discovery are not voluntarily resolved, the Court will need to hear discovery motion(s).   The foregoing, in the aggregate led Plaintiff to conclude he cannot complete the described MSJ discovery before the end of June, 2012.

A factor to consider if the Court truncates discovery in this matter is that depositions will be limited during the initial discovery and therefore will necessitate deposing certain witnesses

more than once.  Plaintiff raised this issue with Defense counsel and he proposed, and Plaintiff agrees that each witness could be deposed more than once but the aggregate time for the depositions of a percipient witness not exceed the 7 hours provided in the FRCP, with due consideration given to the location of the witnesses, i.e. Switzerland and/or the Czech Republic. Plaintiff requests that the Court consider this issue and address it in its Scheduling Order.

In the course of meet and confer dialogue regarding this Joint Proposed Scheduling Order, Mr. Puglisi offered that the Defendants could file their MSJ within a relatively short time. Plaintiff's counsel understood this time to be by the end of January or middle of February. Plaintiff accepts this offer and asks that the Court issue a scheduling order that includes the following MSJ briefing schedule.

Plaintiff will need to obtain and review: the financial institution records of the Galicots, the Galicots' Trusts and the BBG entities; the minutes and agendas of the BBG entities management and board meetings; the travel records of Rafael and Gregorio Galicot, Irene Fedier, and Pilar Urbino, and other BBG employees and board members; the phone records of Gregorio and Rafael Galicot and the BBG entities; loans and credit agreements for Rafael and Gregorio Galicot, the Galicots' Trusts and the BBG entities; the agreements between the BBG entities, the Galicots' Trusts and Rafael and Gregorio Galicot, on the one hand, and companies that perform phone services for them and facility owners or operators (e.g., owners and operators of airports, train stations, bus stations and other transportation facility operators) on the other hand; and a list of all master and sub agents that allegedly solicit and obtain agreements from facility operators for any of the BBG entities.

In addition to this written discovery, Plaintiffs will subpoena Rafael and Gregorio Galicot's, the BBG entities' and the Galicot Trusts' records from at least Wells Fargo Bank and likely other financial institutions once Plaintiff knows the identity of the financial institutions in or through which the Galicots' Trusts, the BBG entities and Rafael and Gregorio Galicot conduct financial transactions.  Plaintiff will subpoena BBG, the Galicots' Trusts and Rafael and Gregorio Galicot accountant's records regarding BBG entities, the Trusts and the Galicots.

Plaintiff also intends to take the depositions of: 1) Rafael Galicot; 2) Gregorio Galicot 3) 30(b)(6) deposition on various relevant categories of BBG Communications, Inc.; 4) 30(b)(6) Depositions of on various relevant categories of BBG Global AG; 4) Pilar Urbino; 5) Salvador Lombroso; 6) Ricardo Singer; 7) Luis Maizel; 8) Jack Maizel; 9)  certain current and former middle and upper management personnel of the BBG entities; 10) the trustees of the Trusts that own the BBG entities; 11)Wells Fargo personnel familiar with the BBG Entities, the Trusts and the Galicots' banking business with Wells Fargo; 12) personnel familiar with BBG's customization of operator services at Network Operator Services, Inc./Centris Information Services; 13) Brian Rhys; 14) David Adler; 15) Denise Galicot; 16) Cristina Rodriguez-Rios; and 17) the BBG entities' auditors and accountants  Therefore, Plaintiff proposes that the Court permit up to 25 depositions.

The foregoing is the scope of discovery Plaintiff presently expects to conduct to prepare himself to oppose Defendants' MSJ and demonstrate that this Court has jurisdiction over Defendants, that Defendants are alter egos of each other, and that Defendants' non-disclosure of rates and fees is likely to deceive a reasonable consumer, is unfair, unlawful, and unconscionable.

As to the merits issues raised by the MSJ, Plaintiff will have to examine BBG's payphone artwork, call center scripts, employee handbooks, and other instructions or directives regarding how rates and/or fees are to be disclosed, if at all.  Plaintiff will also need to examine and subpoena third parties on the volume of complaints and chargebacks registered against BBG. Plaintiff will have to examine the location of call rating, artwork design, artwork dissemination, and operations management.

By conducting the discovery described, above, Plaintiff anticipates he will learn of documents and witnesses presently unknown which will necessitate additional discovery.

Prior to filing this propose scheduling order, Plaintiff described to BBG's counsel much of the discovery described above and discussed the same.  From that discussion Plaintiff's counsel understand that they will get some of the information without dispute, but there will be disputes regarding: a) the discovery of the Galicots' Trusts and Rafael and Gregorio Galicot's financial information and bank records, and b) the contracts with facility operators and sales agents.. If

these areas of disputed discovery are not voluntarily resolved, the Court will need to hear discovery motion(s). The foregoing, in the aggregate led Plaintiff to conclude he cannot complete the described MSJ discovery before the end of June, 2012.

A factor to consider if the Court truncates discovery in this matter is that depositions will be limited during the initial discovery and therefore will necessitate deposing certain witnesses more than once. Plaintiff raised this issue with Defense counsel and he proposed, and Plaintiff agrees that each witness could be deposed more than once but the aggregate time for the depositions of a percipient witness not exceed the 7 hours provided in the FRCP, with due consideration given to the location of the witnesses, i.e. Switzerland and/or the Czech Republic. Plaintiff requests that the Court consider this issue and address it in its Scheduling Order.

In the course of meet and confer dialogue regarding this Joint Proposed Scheduling Order, Mr. Puglisi offered that the Defendants could file their MSJ within a relatively short time. Plaintiff's counsel understood this time to be by the end of January or middle of February. Plaintiff accepts this offer and asks that the Court issue a scheduling order that includes the following MSJ briefing schedule.

| February 17, 2012 | Date by which Defendant shall file and serve its MSJ |
| June 30, 2012 | MSJ: Alter-ego and Jurisdiction Discovery completed by: |
| August 14, 2012 | Date by which Plaintiff shall file and serve its Opposition to Defendant's MSJ |
| August 28, 2012 | Date by which Defendant shall file and serve its Reply in Support of MSJ |
| September 11, 2012 | Hearing of Defendant's MSJ |

### ii.     Post –MSJ Discovery

Plaintiff will need six months to conclude its pre-MCC discovery. If the Court issues its ruling on Defendants' MSJ at the hearing Plaintiff proposes, he would conclude his pre-MCC discovery by March 15, 2013. If her honor believes the Court will not issue its MSJ order for thirty to forty-five days from the MSJ Hearing, Plaintiff proposes the following MCC briefing schedule:

| March 14, 2013 | MCC Expert Designation and Production of Reports Served |
| April 8, 2013 | MCC Rebuttal Expert Designation and Production of Reports Served |
| May 7, 2013 | All pre-MCC discovery concluded |
| June 10, 2013 | Plaintiff files and serves his MCC |
| July 10, 2013 | Defendant files and serves it opposition to Plaintiff's MCC |
| August 12, 2013 | Plaintiff files and serves his reply in support of MCC |
| August 26, 2013 | MCC Hearing |

Plaintiff proposes increasing the number of depositions on each side from 10 to 20, and increasing the number of interrogatories he may serve on each Defendant to 50 interrogatories per defendant. Plaintiff also proposes increasing the number of requests for admission to 50 requests for admissions on each party.

The subjects on which discovery will be needed include, *inter alia*, the relationships among the various BBG entities, including BBG Communications, Inc., BBG Global AG, BBG Holdings Limited, BBG Financial Services SARL, G-Tel Communications, Inc. and B.Tel, S.A. de C.V., as well as the uniform scheme to not disclose fee and rate information for calls placed at BBG payphones prior to callers incurring charges for their calls.

With regard to Defendants' discovery proposal, trifurcation is inappropriate in putative class actions. Plaintiffs propose bifurcation as a measured and appropriate means of avoiding discovery not needed to oppose Defendants' MSJ, but which assures Plaintiff has the right to conduct all discovery allowed under the FRCP.

Furthermore, as to Plaintiff's right to conduct post MSJ discovery, without Court ordered restrictions, the Ninth Circuit, local District Courts, and the MCL 4th, have recognized that "information about the nature of the claims on the merits and the proof that they require may be important to deciding class certification." *See*, e.g., *Ho v. Ernst & Young LLP*, 2007 WL 1394007 (N.D. Cal. 2007); W. Moore, Moore's Federal Practice 3rd, §23.61[6][b] (3d Ed. 1999); H. Newberg & A. Conte, Newberg on Class Actions §9.44 (2002), and cases cited therein. As stated

in the MCL 4th, "arbitrary insistence on the class/merits discovery distinction sometimes thwarts an informed judicial assessment that current class certification practice emphasizes" and delays resolution of the case as it will inevitably devolve into a discussion about what is "class" and what is "merits" discovery, as "there is not always a bright line between the two" and unless Defendants will stipulate that the merits as asserted in the FAC are accurate for purposes of class certification, this issue will significantly slow down discovery and the prosecution of this case. "[S]ometimes…certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 (a) have been satisfied,'…Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped. ' " '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action." *Dukes v. WalMart*,  131 S. Ct. 2541, 2551-2552 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982) and *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454 (1978).

Based on the foregoing, Plaintiff's right to conduct discovery should not be restricted or bifurcated.

     **b.**    **Defendants' Proposed Discovery Plan**

Plaintiff is correct that the parties differ as to how discovery in this matter should be conducted.  Defendants propose conducting discovery in three distinct phases to avoid an unnecessary waste of the parties' and this Court's resources and time. More specifically, Defendants propose that the parties first conduct discovery related to their anticipated motion for summary judgment.  If Plaintiff's claims survive that motion, then Defendants propose that the parties conduct discovery related to class certification, and only if a class is certified, conduct discovery related to any remaining issues.

Such serial discovery will not, as Plaintiff contends, "truncate" discovery.  If Plaintiff defeats Defendants' intended motion for summary judgment and is able to certify a class, he will still able to take all of the discovery to which he would be entitled were discovery not conducted in phases.  The only difference between Defendants' proposed phased discovery and what Plaintiff proposes is that Defendants' plan ensures that that the deluge of discovery that Plaintiff intends to

take is done in such a way that unnecessary discovery (and discovery disputes) can be avoided, preserving the parties' time and resources.

Plaintiff also claims that class discovery issues are often enmeshed with merits issues, and the discovery should be conducted without bifurcation.  However, Plaintiff's argument ignores the fact this case differs substantially from the factual scenarios presented in the cases and secondary authorities that he cites.  Those cases involve classes with similar claims.  Here, by contrast, claim similarity is very much an issue, as Plaintiff seeks to represent a ***worldwide class of people*** who made telephone calls from ***myriad different countries***, with ***different disclosures*** on their payphones and ***different laws governing*** those disclosures.  Before putting the parties through the expense of discovery (especially of the apparently limitless nature that Plaintiff intends), the Court should determine whether Plaintiff's claims are similar enough to proceed on a class basis.  Such an approach is both favored by the courts, and warranted in this action.  *See*, *e.g.*, *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *Krim v. Banc Texas Group, Inc.*, 99 F.3d 775, 777-78 (5th Cir. 1996); *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1194 (11th Cir. 2003).

### i.    Initial Discovery

As recently stated by the District Court in connection with motions to dismiss filed by both BBG Global and BBG Communications, the issue of whether BBG Global and BBG Communications have an alter ego relationship is a threshold issue:  "[T]hat is the whole factual argument.  If you don't prove the alter ego and you don't prove the connection to California, you're out the door.  You pled it sufficiently.  Whether you could prove it is a whole other story." [Transcript of Sept. 23, 2011 hearing at 35:9-13.]  In other words, from the District Court's perspective, whether Plaintiff, a Canadian national, can assert a claim under California law arising out of a phone call that he made from Hong Kong to Canada depends on whether he can prove an alter ego relationship between Comm and Global.  If he cannot, then there is no basis for applying California law.

Based on the District Court's own reasoning, Defendants believe that discovery as to the alter ego and jurisdictional issues should be completed before any other discovery ("**Initial**

1  **Discovery**").  This will enable Defendants to file a motion for summary judgment, which, if

2  successful, would result in an early resolution of this matter, resulting in a more efficient use of

3  scarce judicial resources.  To enable the parties to focus on the issues that will be raised by

4  Defendants' intended motion for summary judgment, Defendants believe that all other discovery—

5  including initial disclosures beyond the scope of the issues raised in Defendants' intended motion

6  for summary judgment—should be stayed until that limited motion for summary judgment is

7  decided.

8      That said, it is important to note that Defendants in no way acquiesce to the scope of the

9  discovery that Plaintiff has served on Defendants in this action, which is grossly overbroad.

10  Indeed, in over 25 years of class-action practice, counsel for Defendants, Mr. Puglisi, has not seen

11  discovery more abusive than that discovery most recently served on Defendants in this action.

12  The discovery sought to date is so grossly overbroad that it can only be intended to harass

13  Defendants.  The requests are even more egregious in light of Plaintiffs failure to present any

14  evidence to the Court to support their conclusory allegations.  In short, Plaintiffs discovery

15  requests to date are a transparent attempt by Plaintiffs to use the discovery process to beat

16  Defendants into submission by burdening them with overwhelming costs.

17      For example, Plaintiff alleges that there is an alter ego relationship between Global and

18  Comm, and has sued both of those entities.  Plaintiff, however, has sought discovery much broader

19  than this issue, in a transparent attempt to harass Comm, Global, their agents, and the Galicot

20  family.  Although Plaintiff has not sued any other entity or individual, nor has he made any

21  allegations suggesting that Global or Comm is the alter ego of any other person or entity, he has

22  sought, among other things, private personal financial information and phone records about the

23  Galicot family and documents regarding Gregorio and Rafael Galicot's and Pilar Urbino's

24  international travel.  This case is not about the Galicots as individuals or about their family trusts,

25  and Plaintiff has no basis for seeking such private information before exploring the relationship

26  between Global and Comm, which, as Plaintiff already knows from the declarations of

27  Defendants' auditors, are adequately capitalized and operate at arm's length.  Plaintiff similarly

28  asks for documents related to service at the Leipzig Airport, which is completely irrelevant to this

case, which is about phone calls made by a Canadian citizen from a payphone at the Hong Kong Airport to Canada.  Leipzig, Germany has nothing to do with this lawsuit.  Moreover, this discovery is particularly objectionable because it is a transparent attempt to obtain discovery regarding another case pending in the District Court for the Western District of Texas where the parties have not yet conducted the early meeting of counsel and discovery has not yet begun. Finally, Plaintiff requests documents regarding Internal Revenue Service investigations or audits of Comm and the Galicots.  Again, this case is about disclosures made a payphone in Germany. The Comm's and the Galicot's tax documents have no bearing whatsoever on this issue.  Plaintiff's proposed discovery is completely overbroad, irrelevant, and best described as a discovery blizzard that can serve no purpose but to harass Defendants. Defendants intend to vigorously object to such discovery.

Plaintiff also suggests that he is entitled to explore not only the disclosure of rates at the Hong Kong airport, but also (1) Defendants' relationships with **all** of their agents and other entities who perform services on their behalf worldwide and (2) the volume of complaints and chargebacks registered against Defendants on a worldwide basis, even though Plaintiff's claims relate only to phone calls that he made from Hong Kong to Canada.  Such broad discovery has no bearing on the issues to be raised in Defendants' motion for summary judgment, and should be put off until the Court determines whether Plaintiff's action can proceed beyond summary judgment and whether a class can be certified.  There is little point spending countless hours on such discovery (if it is even relevant) if Plaintiff's claims will not survive Defendants' motion for summary judgment or class certification.

       **ii.**        **Class Discovery And Merits Discovery.**

If Plaintiff gets past this initial phase, Defendants contend that discovery should be further phased between discovery related to (1) Plaintiff's intended motion for class certification ("**Class Discovery**") and (2) the merits ("**Merits Discovery**").  Plaintiff has not at this time described any additional discovery that he intends to seek in these two later phases.

### iii.      Initial Disclosures And Depositions.

As noted above, Defendants believe that initial disclosures should be phased as well, and propose that the parties exchange more limited initial disclosures related only to the issues to be raised by Defendants' motion for summary judgment by January 23, 2012.

As to depositions, Defendants understand that phased discovery may necessitate deposing certain individuals more than once.  Defendants agree with Plaintiff that some witnesses could be deposed once during each phase of discovery, but that the total deposition time for any witness over the course of this lawsuit cannot exceed the seven hours provided for in the Federal Rules Of Civil Procedure.

### iv.      Defendants' Proposed Schedule.

Defendants note that Plaintiff now complains that he cannot complete his discovery within the time frame that he requested and the Court suggested in its order following the Early Neutral Evaluation Conference, and instead request additional time (which, incidentally, is nearly identical to Defendants' original proposal to the Court).  Defendants are willing to consider a longer schedule, but they propose the following dates in accordance with the Court's ENE Order.  Moreover, Defendants note that their counsel stated that they could file their motion for summary judgment fairly quickly, but ***never*** proposed a date certain or suggested that they could file it in January or February.  On the contrary, Defendants suggested, in writing, the March 9, 2012 date proposed below.  Thus, Plaintiff's counsel's "understanding" that Defendants' counsel agreed to file Defendants' motion by "the end of January or middle of February" is incorrect.

| Date | Event |
|---|---|
| February 24, 2012 | Last day to conduct Initial Discovery, file related discovery motions. |
| March 9, 2012 | Last day to file motions for summary judgment related to the Initial Discovery. |
| April 27, 2012 | Hearing on motions for summary judgment related to the Initial Discovery. |
| May 25, 2012 | Last day to serve initial disclosures |

| Date | Event |
|------|-------|
| August 3, 2012 | Last day to conduct Class Discovery and file related discovery motions (assuming no experts). |
| August 17, 2012 | Last day to file motion for class certification |
| September 28, 2012 | Last day to oppose motion for class certification |
| October 12, 2012 | Last day to file reply brief in support of motion for class certification |
| October 26, 2012 | Hearing on motion for class certification |
| March 29, 2013 | Last day to conduct Merits Discovery |
| July 3, 2013 | Last day to file dispositive motions |

Finally, Defendants do not believe that increasing the number of depositions or written discovery allowed in this action is necessary at this time.  Plaintiff has suggested that he intends to depose *17* people and/or entities in connection with the Initial Discovery alone, specifically with regard to his alter ego allegations.  Plaintiff does not need to take 17 depositions to determine that there is no alter ego relationship between Global and Comm, nor does he need 25 depositions in this case more broadly.  Defendants believe that Plaintiff should be limited to the 10 depositions to which he is entitled under the Federal Rules of Civil Procedure at this time.  If, after taking those depositions, Plaintiff believes that he needs to depose more people and or entities, Plaintiff should seek relief from the Court.

**2.** **PROPOSED TIMING OF RULE 26(A)(2) EXPERT WITNESS DISCLOSURES**

The parties agree that the Rule 26(a)(2) expert witness disclosures will be made pursuant to Rule 26(a)(2)(C), for trial experts and propose their respective schedules for doing so per the schedules set forth below.  Plaintiff proposes that MCC experts be designated and their reports produced as stated in the schedule proposed above.

Defendants do not believe that Plaintiff will need expert testimony to support his motion for class certification.  However, if Plaintiff does use expert testimony, Plaintiff's proposal to give Defendants less than one month to review his expert's report, depose his expert, find their own

expert, and have that person prepare a report is unreasonable.  Defendants need, at the very least, two months in which to complete all of these tasks.  Thus, in the event that Plaintiff intends to use expert testimony to support his motion for class certification, Defendants propose that Plaintiff disclose his expert and provide a report on July 13, 2012 and Defendants disclose their expert and provide a report on September 28, 2012, when they oppose Plaintiff's motion.  Defendants further propose that class discovery be extend only with regard to their expert so that Plaintiff may depose him or her if Plaintiff so chooses for use in connection with Plaintiff's reply brief.

3.    **DISPOSITIVE MOTIONS**

   a.    **Plaintiff's Position**

Plaintiff understands that BBG Communications, Inc. or BBG Global AG, but possibly both, will be filing motions for summary judgment and that discovery directed at the jurisdiction and alter-ego issues that will be part of the Summary Judgment motions.  As stated above Plaintiff's position is that it is only sensible to have orderly discovery, including some merits discovery, proceed first - before one or both of the Defendants file their summary judgment motions.  After summary judgment is decided, the parties will conclude any merits and class discovery they deem necessary to prepare to move for and oppose class certification.

   b.    **Defendants' Dispositive Motions**

As noted above, Defendants intend to file an initial dispositive motion aimed at the alter ego and jurisdictional issues.  Moreover, both sides should be given the opportunity to file for summary judgment after class certification, if any.  Based thereon, Defendants propose the following dates, which are also set forth above:

| Date | Event |
|---|---|
| March 9, 2012 | Last day to file motions for summary judgment related to the Initial Discovery. |
| March 30, 2012 | Last day to file opposition to motion for summary judgment |
| April 13, 2012 | Last day to file reply brief in support of motion for summary judgment |
| April 27, 2012 | Hearing on motions for summary judgment |

| Date | Event |
|------|-------|
|  | related to the Initial Discovery. |
| July 3, 2013 | Last day to file dispositive motions |
| July 26, 2013 | Last day to file oppositions to dispositive motions |
| August 9, 2013 | Last day to file replies in support of dispositive motions |
| August 23, 2013 | Hearing on dispositive motions |

c.   **Defendants' Proposed Class Certification Briefing Schedule**

Defendants propose the following briefing schedule for Plaintiff's motion for class

certification (following the close of Class Discovery and assuming no experts):

| Date | Event |
|------|-------|
| August 17, 2012 | Last day to file motion for class certification |
| September 28, 2012 | Last day to oppose motion for class certification |
| October 12, 2012 | Last day to file reply in support of motion for class certification |
| October 26, 2012 | Hearing on motion for class certification |

**4.      ANTICIPATED PRE-TRIAL CONFERENCE DATES**

     **a.      Plaintiff's Proposed Dates**

The Court's ruling on the pending motions referenced above Plaintiffs' anticipated motion for class certification may have some impact on whether the parties would seek severance of certain claims or issues, bifurcation of certain claims or issues, or some other ordering of proof at the time of trial.  Counsel will continue to discuss these and other relevant scheduling issues as the case progresses.

Plaintiff believes that the following pre-trial schedule is reasonable, and realistic, resulting in a trial date about 7 months after the Court issues its order regarding Plaintiff's Motion for Class Certification.

| | |
|---|---|
| Trial Expert Disclosures pursuant to Rule 26(a)(2) | November 27, 2013 |
| Contradictory / Rebuttal Expert Information Disclosures | December 26,2013 |
| Dispositive Motion Hearing Cut-off | February 14, 2014 |
| Fact and Expert Discovery Cut-off | April 4, 2014 |
| Last Day for Final Pre-Trial Meeting of Counsel | April 18, 2014 |
| Last Day to Lodge Final Pre-Trial Conference Order, file Final Memoranda and Joint Exhibit List, etc. | April 25, 2014 |
| Final Pre-Trial Conference | May 16, 2014 |

Plaintiff requests a jury trial on all damage claims and a court trial on all equitable issues. Plaintiff estimates the trial may take approximately 15 court days, depending upon the class certification ruling.

     **b.      Defendants' Proposed Dates**

Defendants believe that the following pre-trial schedule, which incorporates all dates referenced in this Report, is reasonable, and realistic:

| Date | Event |
|------|-------|
| February 27, 2012 | Last day to conduct Initial Discovery, file related discovery motions. |
| March 9, 2012 | Last day to file motions for summary judgment related to the Initial Discovery. |
| March 30, 2012 | Last day to file opposition to motion for summary judgment |
| April 13, 2012 | Last day to file reply brief in support of motion for summary judgment |
| April 27, 2012 | Hearing on motions for summary judgment related to the Initial Discovery. |
| May 25, 2012 | Last day to serve initial disclosures |
| August 3, 2012 | Last day to conduct Class Discovery and file related discovery motions. |
| August 17, 2012 | Last day to file motion for class certification |
| September 28, 2012 | Last day to oppose motion for class certification |
| October 12, 2012 | Last day to file reply brief in support of motion for class certification |
| October 26, 2012 | Hearing on motion for class certification |
| March 29, 2013 | Last day to conduct Merits Discovery and file discovery motions |
| April 12, 2013 | First Identification of Expert Witnesses |
| April 26, 2013 | Supplemental Identification of Expert Witness |
| May 10, 2014 | Expert Disclosures pursuant to Rule 26(a)(2) |
| May 24, 2013 | Contradictory / Rebuttal Expert Information Disclosures |
| June 21, 2013 | Last day to conduct expert discovery and file expert discovery motions |
| July 3. 2013 | Last day to file dispositive motions |
| July 26, 2013 | Last day to file oppositions to dispositive motions |
| August 9, 2013 | Last day to file replies in support of dispositive motions |

| Date | Event |
|------|-------|
| August 23, 2013 | Hearing on dispositive motions |
| September 16, 2013 | Last day to file motions *in limine* |
| September 23, 2013 | Last Day for Final Pre-Trial Meeting of Counsel |
| October 7, 2013 | Last Day to Lodge Final Pre-Trial Conference Order, file Final Memoranda and Joint Exhibit List, etc. |
| October 14, 2013 | Final Pre-Trial Conference; hearings on motions in limine |

5.  **Document Confidentiality, Preservation And ESI Issues**

Prior to the CMC, the parties will exchange information about preserving discoverable information and proposed protocols for producing electronically stored information pursuant to Fed. R. Civ. P. 26(f)(2) and (3).

Dated:  January 6, 2012

EPPSTEINER & FIORICA ATTORNEYS, LLP

By            */s/ Stuart M. Eppsteiner*
            Stuart M. Eppsteiner, Esq.
            Andrew J. Kubik, Esq.

            Attorneys for Plaintiff and the Putative Class

Dated:  January 6, 2012

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By            */s Fred R. Puglisi*
            Fred R. Puglisi
            Norma Garcia Guillen
            Valerie E. Alter
            Elizabeth S. Berman

            Attorneys for Defendants BBG Communications, Inc. and BBG Global AG